## DEWEESE v. REINHARD.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 151. . Argued January 13, 14, 1897. — Decided February 15, 1897.

-The plaintiff's contention in this case was that, notwithstanding the action
of the Department of the Interior in certifying the land in controversy
to the State of Nebraska and the subsequent conveyances in the chain of
title from that State to the appellees, such apparent legal title was abso-
lutely void, because, by the acts of Congress the land was not subject to
selection by the State, it being within the limits of the land grant to the
Burlington & Missouri River Railroad Company, and reserved for home-
stead and preëmption, but not for private entry. All the facts upon
which that contention rested were matters of statute and record, and
any defence to the apparent legal title created by them was available
in an action at law to recover possession. Held, that, without deciding
whether the selection and certification of these lands were absolutely
void or simply voidable at the election of the Government, or were valid
and beyond any right of challenge of the Government, or any one else,
a case was not presented for the interference of a court of equity.

THE controversy in this case respects the northeast quarter
of section 14, township 5, range 3, situate in Saline County,
Nebraska. The facts are these : The State of Nebraska upon
its admission into the Union became entitled, by virtue of
section 8 of the act of Congress, September 4, 1841, c. 16,
5 Stat. 453, 455, to 500,000 acres of public land to aid in pro-
moting its internal improvements. March 26, 1868, the State
selected 359,708 acres of land, including the tract in contro-
versy as part of this grant. March 24, 1870, the selection
was approved by the Commissioner of the General Land
Office, who, in his certificate of approval, certified that the
lists had been " carefully examined and compared with the
township plats and tract books of this office and are found
to be free from conflict ; and I respectfully recommend that the
same be approved subject to any valid interfering rights which
may have existed at the date of selection." March 29, 1870,
this action was approved by the Secretary of the Interior in
these words : " Approved subject to all the rights above

mentioned." The lists duly certified were transmitted to the
State and recorded in the proper office. April 20, 1871, the
State of Nebraska patented 100,000 acres of these lands,
including the tract in controversy, to the Midland Pacific
Railway Company in execution of a contract made by the
State, through an act of its legislature, February 15, 1869.
Laws Nebraska, 1869, p. 153. The appellees hold under a
chain of title from the Midland Pacific Railway Company,
the deed to Jacob Reinhard, one of the appellees, and Fred-
erick Fieser, being dated November 11, 1878, they at the
time paying for the land twelve dollars per acre. On May 12,
1892, Frederick Fieser died, and his heirs and devisees are,
in addition to Jacob Reinhard, the appellees in this case.
The appellees and their grantors have paid the taxes of every
kind levied upon the land since the patent from the State,
amounting at the time of the decree in the Circuit Court to
$1375.81.

The claim of appellant was initiated on May 31, 1883; more
than fifteen years after the selection by the State, more than
thirteen years after the approval by the Secretary of the
Interior of such selection and the certification to the State,
twelve years after the State had conveyed the land away to
its grantee, and nearly five years after the deed to appellees.
It was initiated by an occupation of the tract and an applica-
tion to enter it as a homestead. This application was rejected
by the local land officers, and their action in this matter was
affirmed by the Commissioner of the General Land Office and
the Secretary of the Interior. On July 6, 1888, the appellant,
who had been in continuous possession ever since his first
entry, tendered the local land office proof that he had com-
plied with the terms and conditions of the homestead laws
of the United States, and demanded a patent for the land.
This was denied by the local land officers, and from such
denial no appeal was taken. The theory upon which the
appellant proceeded was that the land was within the limits
of the grant made by the United States to the Burlington
& Missouri River Railroad Company by act of Congress
July 2, 1864, c. 216, 13 Stat. 356, 364, and that by the act

of March 6, 1868, c. 20, 15 Stat. 39, the even-numbered sections within such limits were raised to double minimum lands, and, while subject to homestead- and preëmption entry, were not subject to private entry; that therefore the selection by and certification to the State were absolutely void and passed no title; that the title remained in the United States until he by full compliance with the requirements of the homestead laws acquired an equitable right to the land.

An action of ejectment having been commenced by Reinhard and Fieser on November 16, 1885, in the United States Circuit Court for the District of Nebraska, to recover possession, a bill in equity was filed by the appellant in the same court on October 8, 1888, to enjoin the further prosecution of that action and to quiet his title. Upon pleadings and proof the Circuit Court entered a decree dismissing the bill, which decree was affirmed by the Circuit Court of Appeals, 19 U. S. App. 698, from which decree an appeal was taken to this court.

*Mr. G. M. Lambertson* for appellant. *Mr. J. W. Deweese* was on his brief.

*Mr. Charles E. Magoon* and *Mr. Charles Offutt* for appellees.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

On the threshold of this case we are confronted with the question whether, assuming that the appellant has any rights in the land, a case is presented for the interference of a court of equity. His contention is that notwithstanding the action of the Interior Department in certifying the land to the State, and the subsequent conveyances in the chain of title from the State to the appellees, such apparent legal title was absolutely void because by the acts of Congress the land was not subject to selection by the State, it being within the limits of the land grant to the Burlington & Missouri River Railroad Company, and reserved for homestead and preëmption, but not for private entry. All the facts upon which his contention rests are

matters of statute and record, and any defence to the apparent legal title created by them was available in the action to recover possession. For if it be true as contended that this land thus certified to the State was not under the acts of Congress land open to selection, the validity of such certification, as of a patent, can be challenged in an action at law. *Burfenning* v. *Chicago, St. Paul &c. Railway*, 163 U. S. 321, and cases cited in the opinion.

But the mandate of the statute, Rev. Stat. § 723, affirming in this respect the general doctrine in respect to the jurisdiction of courts of equity, is that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law." This general proposition has been affirmed by this court in a multitude of cases, among others the following, in which the jurisdiction of courts of equity to restrain proceedings at law was denied on the ground that there existed a full and adequate defence, available in the legal action. *Hungerford* v. *Sigerson*, 20 How. 156; *Insurance Company* v. *Bailey*, 13 Wall. 616, 623, in which it was said: "Where a party, if his theory of the controversy is correct, has a good defence at law to 'a purely legal demand,' he should be left to that means of defence, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied a preventive remedy." *Grand Chute* v. *Winegar*, 15 Wall. 373. It follows from these considerations that if this suit in equity is to be regarded as simply one to restrain the action at law, it cannot be sustained, because upon the appellant's own theory he has a full, adequate and complete defence at law.

But it is contended by appellant that his suit is something more than one to restrain the action at law; that it is a suit to quiet his title and to hold the appellees as trustees of the legal title for his benefit; that the restraint of the law action is simply incidental to and in furtherance of the main relief, which is the quieting of his title. Assuming for the purposes of this case that his contention in this respect is correct, we

agree with the Court of Appeals that the showing made in his bill is not one that appeals in the slightest degree to the conscience of a chancellor.   The theory upon which the appellant proceeds is substantially that because he has not a legal title a court of equity must enforce and establish his right, or, in other words, that the lack of legal title creates an equitable duty.   We are unable to assent to this contention.   Something more than the absence of legal title is necessary to call into action the processes of a court of equity.   The right, whatever it may be and from what source derived, must be not only one not protected by legal title, but in and of itself appealing to the conscience of a chancellor.   A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity.

Upon his own showing the plaintiff's conduct demands condemnation rather than commendation.   The title to vacant land within the States that originally formed the United States remained in those States severally, while the title to land subsequently acquired by the United States, whether through cession from the original States, by conquest or treaty, has been retained by the General Government — lands within the State of Texas furnishing the one notable exception. Though Congress on the admission of the new States has not transferred to them the vacant lands within their limits, it has made to them large grants for school and other purposes.   In carrying out this policy, in 1841 Congress passed an act granting to certain named States and to each State subsequently admitted into the Union 500,000 acres of land to aid in internal improvements, the selection of such lands to be made in such manner as the legislatures of the respective States should provide.   Such selections were subject to the approval of the land department of the United States, but when so made and approved the lands were to be certified to the State, and such certification was to have all the effect of a patent.   Now, assuming that the contention of the plaintiff is correct, that

subsequent legislation of Congress had the effect of providing that such selection should be made from certain classes of lands, and that the tract in controversy did not belong to any of those classes, the fact remains that the land was selected by the State, and such selection approved by the land department, and that the land so selected and thereafter certified was land belonging to the United States. At the time of such selection and certification the only parties in interest were the United States and the State. Concede the fact that, through inadvertence, mistake or (of which there is no evidence) wrong on the part of the officials, this land was improperly selected and certified, yet the United States for thirteen years never questioned in any way the rightfulness of the selection and certification, or challenged the title which was apparently confirmed thereby to the State. It may be conceded that no error or wrong on the part of the officers of the land department concludes the United States, and that they might whenever they saw fit by proper proceedings set aside the title thus apparently conveyed. But they took no steps. They acquiesced in the transaction. The land was land which the United States had power to convey. Congress could by special act or otherwise have transferred this specific tract to the State. The records of the transaction were public and open. It was no secret conveyance by which title was wrongfully conveyed to the State, but a matter of record of which everybody, both governments included, were chargeable with notice. Not only was the title thus apparently transferred unchallenged, but also the State dealt with it as its own property, and conveyed it in satisfaction of one of its contracts. It passed from grantee to grantee, the last sale being at the price of $12 an acre. And further, the State during the years subsequent to its conveyance treated the land as subject to taxation, and they who purchased from it paid taxes thereon amounting to over one thousand dollars.

After all this, the plaintiff, assuming to do that which the United States had not done — that is, treat the selection and certification as void — and acting not for the United States but for himself, attempted to build up a right in himself to

the land. This was not done in ignorance of the claims of others, for when he first applied to enter the land as a homestead he was notified by the officers of the land department that it had already been selected and certified to the State, and his application to enter was on that account rejected. The county records also notified him of the several conveyances and the amount of money paid by the appellees. He was, therefore, simply an intruder. It is earnestly insisted by counsel that Congress by its legislation has set apart certain classes of land for the benefit of preëmptors and those desiring to enter homesteads; that the Government thereupon, became, as it were, a trustee, holding the title to those lands in trust for all who should elect to make themselves *cestuis que trust;* that the plaintiff, availing himself of this legislation, took the steps prescribed by the statute and made himself therefore a *cestui que trust,* with a beneficial right to this land, and the right to challenge not only all subsequent but also any prior action taken by his trustee in disregard of such beneficial right. We cannot agree to this contention. Whatever rights such so-called *cestui que trust* may have against his trustee, the government, or all parties claiming under the government subsequent to the time of the initiation of his proceedings, he is not in a position to challenge any action of his so-called trustee anterior to that time. The Government did not bind itself by its statutes to keep any lands for subsequent occupation and purchase, and if prior to such occupation it has even though mistakenly conveyed away a tract to a third party, such conveyance, although voidable at its instance, cannot be challenged by a mere intruder. And when such conveyance is of long standing, and the transaction has been acquiesced in for many years by the Government, and parties relying upon the title apparently conveyed have invested large sums of money, then an attempt by such an intruder to set aside all these transactions and to appropriate the property to himself is offensive to every sense of right and justice, and equity will lend no helping hand to such effort. The authorities cited in the opinion of the Court of Appeals sustain this conclusion. *Cooper v. Roberts,* 18 How.

173: *Spencer* v. *Lapsley*, 20 How. 264; *Cragin* v. *Powell*, 128 U. S. 691. This last case is quite pertinent: It appeared that in 1841 the United States had issued to one Bach patents to certain surveyed and described lands, the title to which by subsequent conveyances passed to Cragin. In 1877, Powell, a surveyor, was employed by Cragin to make a survey of his property, and discovering as he supposed an error by which lands apparently included within the survey and patent were, in fact, outside of its limits, persuaded one Samuel Wolf to obtain a patent which would cover the lands thus erroneously, as contended, included in the first survey, and afterwards purchased those lands from Wolf. Thereupon he commenced a suit "to fix the boundaries," the effect of which if the boundary was established according to his claim would be to set over to him lands which, as he alleged, were erroneously included in the first survey and patent, but which had been all these years occupied and cultivated by Bach, the patentee, and his grantees. A decree in his favor in the Circuit Court was reversed, and the case remanded with instructions to dismiss the bill, Mr. Justice Lamar saying in the opinion (p. 700):

"The appellee, Powell, is a surveyor, who, in the year 1877, while employed by appellant to make a survey of his plantation, thought he discovered an error in the public lands, whereby it would appear that his lands were not, in fact, situated on Bayou Four Points. From his own evidence it is shown that he induced Wolf to obtain the patent from the State of Louisiana for the land which he, the said appellee, purchased from him. When he purchased this land from Wolf he knew that the tracts to which he was laying claim had been possessed and cultivated by the appellant for a long period of years."

"An advantage thus obtained a court of equity will not readily enforce. As was said in *Taylor* v. *Brown*, 5 Cranch, 234, 256: 'The terms of the subsequent location prove that the locator considered himself as comprehending Taylor's previous entry within his location. . . . He either did not mean to acquire the land within Taylor's entry, or he is to be considered as a man watching for the accidental mistakes of

others, and preparing to take advantage of them. What is gained at law by a person of this description equity will not take from him; but it does not follow that equity will aid his views.' "

Without, therefore, determining whether the selection and certification of these lands was absolutely void or simply voidable at the election of the Government, or valid and beyond any right of challenge on the part of the Government or any one else, we are of the opinion that equity will not help the plaintiff in his suit, and the decree of the Court of Appeals is

*Affirmed.*