ILLINOIS STEEL CO. v. BUDZISZ et al.

(Circuit Court, E. D. Wisconsin. July 30, 1897.)

Public Lands—Patents—Pre existing Equities.

The validity of patents issued in 1838 for surveyed lands offered for sale by president's proclamation in 1835 cannot now be questioned, either by the United States or by any person in its right, under equities pre-existing or otherwise.

Action at law by the Illinois Steel Company against John Budzisz and others. On motion to strike out special matter alleged in the answer.

This action is in ejectment, and the plaintiff moves to strike out, as irrelevant, incompetent, etc., special matter alleged in the answer by way of defense and counterclaim. The matter referred to is voluminous, and sets forth facts and inferences by way of impeachment of the title of the plaintiff, which title the answer asserts is "derived from a purported entry as a float or floating right," by one Daniel Darnell, at the Green Bay land office, on July 30, 1835, and a purported "patent of the United States, dated the 1st day of September, 1838, to Alexander J. Irwin, assignee," etc., for one tract, and a purported "patent of the United States, dated the 16th day of April, 1838, to Albert G. Ellis, assignee," etc., for the other tract. The allegations to that end are substantially as follows: (1) That the title to the lands still remains in the United States; (2) that an entry by Claflin and Darnell on July 30, 1835, was void because it "lacked the essential ingredients, both in law and fact, both in the matter of residence and occupation," under the laws applicable thereto; (3) that the tract was not of the description to authorize a float or floating right upon a joint entry by two persons under the act of congress; (4) that the residence of Claflin and Darnell, respectively, as set forth, did not extend to the years 1829 and 1830, and was inconsistent with such right of entry; (5) that the "Indian title to" said tract "was not extinguished" until the ratification of certain treaties referred to, in the years 1831, 1832, 1833, and 1848, and, as to the treaty of 1831, retained the "liberty to hunt and fish on the lands ceded" until surveyed and offered for sale by the president; (6) that the lands were surveyed in 1834, and were first offered for sale by the president by his proclamation of May 6, 1835. The answer prays adjudication of invalidity against both entries and patents.

Van Dyke, Van Dyke & Carter, for plaintiff.
Rublee A. Cole, for defendants.

SEAMAN, District Judge. The general rule is undoubted that the defendant in ejectment may avail himself of any defect in the

plaintiff's chain of title to defeat recovery, when the complaint founds the right of possession solely upon the assertion of title. But a patent of the United States is the highest evidence of title, where the grant originates out of the public domain. The pleader is mistaken in the inference that the ownership of these lands was at any time, in the view of the law, vested in the Indians, or derived through the treaties referred to. There is no recognition by any of the authorities of a fee vested in the Indians. Spalding. v. Chandler, 160 U. S. 394, 402, 16 Sup. Ct. 360. As to the lands in Wisconsin, the treaty with Great Britain and the cessions of Massachusetts and Virginia are the legal sources of title in the general government. The treaties with the Indians are regarded only for rights of occupancy and for reservations from sale. Therefore the doctrine is established that the patent issued by the government is "an invaluable muniment of title and a source of quiet and peace to its possessor." Wright v. Roseberry, 121 U. S. 488, 501, 7 Sup. Ct. 989. As held under a constant line of decisions, it cannot be impeached, if the lands are patentable, unless there is entire want of jurisdiction in the land department to effect the grant, or conditions are presented to cancel or avoid for fraud or mistake affecting the issue of the patents; and, for the latter grounds, relief can be extended only in favor of the United States, or of the party defrauded or deprived of his rights. Ehrhardt v. Hogaboom, 115 U. S. 67, 5 Sup. Ct. 1157; Vance v. Burbank, 101 U. S. 514; Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. 340.

The industry of counsel for the defendants has brought to light reports in the land department of proceedings in other cases, presenting a state of facts similar to that set forth in this answer, wherein the ruling was against the entries, and patents were denied. Assuming, for the purposes of this motion, that there was no right of entry at the time of original entry alleged, the answer concedes that these lands were offered for sale by the president's proclamation of May 6, 1835, upon survey of 1834, and that the patents were issued, respectively, April 16, 1838, and September 1, 1838. It is not asserted that their validity has ever been questioned since, either by the United States, or by any person in its right, under equities pre-existing or otherwise. The lands became patentable after the survey and proclamation, and were clearly within the jurisdiction of the land department when the patents issued in 1838. All questions as to entry and right to patent were then determinable by that tribunal, and the patents were not void, although they may have been voidable at the proper instance. The doctrine for which the defendants contend would overturn the well-settled rules by which the patent from the government is fortified, and finds no sanction in any of the numerous authorities cited by counsel. Independently of the act of congress of March 3, 1891 (26 Stat. 1093), I am clearly of the opinion that the special matter alleged in the answer and included in the motion states no grounds which are available to these defendants by way of defense. Under the act of limitations referred to, any action by the United States to annul the patent is now barred; and if the defendants were possessed of paramount equities, or were in any manner entitled to avail themselves of rights existing in the United States, they are equally barred

by the limitation. The motion is granted, and the matter therein specified will be stricken from the amended answer and second amended answer.