# GENERAL EXCAVATOR CO. v. KEYSTONE DRILLER CO.

# KEYSTONE DRILLER CO. v. GENERAL EXCAVATOR CO.

# OSGOOD CO. v. KEYSTONE DRILLER CO.

# KEYSTONE DRILLER CO. v. OSGOOD CO.

### Nos. 6065–6068.

Circuit Court of Appeals, Sixth Circuit.
Dec. 6, 1932.

F. O. Richey, of Cleveland, Ohio, and C. R. May, of Beaver, Pa. (Richey & Watts, of Cleveland, Ohio, and May & Bradshaw, of Beaver, Pa., on the brief), for Keystone Driller Co.

E. P. Corbett, of Columbus, Ohio, and L. T. Williams, of Toledo, Ohio (Edw. L. Reed, of Dayton, Ohio, Corbett & Mahoney, of Columbus, Ohio, and Williams, Eversman & Morgan, of Toledo, Ohio, on the brief), for General Excavator Co. and Osgood Co.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The above-numbered appeals and cross-appeals are founded upon two almost identical actions commenced in the District Court for the Northern District of Ohio, respectively against the General Excavator Company and the Osgood Company, and alleging infringement of five separate patents owned by the Keystone Driller Company, one of which was patent to Robert Rex Downie, No. 1,511,114, granted October 7, 1924, which was held valid by this court November 5, 1930. Byers Mach. Co. v. Keystone Driller Co. (C. C. A.) 44 F.(2d) 283.

The bills of complaint in the present actions were filed after the decision of the Byers Case in the District Court, and while the appeal in that case was pending here, but the Downie and Clutter patents which had been upheld by the District Court were treated by plaintiff as adjudicated patents, and motions for interlocutory injunctions were forthwith made and pressed. These motions were denied, but in lieu of granting them the defendants were required to give bonds conditioned upon the payment of all profits and damages which might be decreed against them, and such bonds were in fact given. In this respect and to this extent the decision of the District Court in the Byers Case became an important factor in the prosecution of the present actions. Later, when this court affirmed the decree of the District Court, the effect of the Byers Case became even more apparent.

We come, then, to the issue which, in our opinion, is decisive of the present appeals. Prior to the grant of the Downie patent, No. 1,511,114, indeed, prior to the application for that patent, Downie heard of a possible prior use at Joplin, Mo., during the winter of 1919–20, by one Bernard R. Clutter, a brother of the patentee of the Clutter patent in suit. Downie himself testified that his own conception of the device of his patent was in the

summer of 1920, so that the information which he had received at least cast serious doubt upon the validity of any patent which might subsequently be issued to him, whether the prior use were ultimately to be considered as an abandoned experiment or not (and he was advised by his counsel that it might be so considered), and whether or not he might be granted priority in any interference declared by the Patent Office, under the doctrine of Mason v. Hepburn, 13 App. D. C. 86; Cf. Westinghouse Elec. & Mfg. Co. v. Wadsworth Elec. Mfg. Co., 51 F.(2d) 447 (C. C. A. 6). Notwithstanding this information, and without thorough investigation of the facts, Downie proceeded to file his application for patent, and the same was prosecuted to issue on October 7, 1924.

The Downie patent having issued, and the action against the Byers Machine Company being in contemplation, doubt and uneasiness as to the effect of the Joplin use was revived. Counsel advised further investigation, and early in 1925 Downie went to Lakewood, N. J., to interview Bernard R. Clutter. It cannot be disputed upon any reasonable construction of the evidence here that as a result of this interview Clutter was offered a merchandise credit of approximately $3,800, perhaps $4,000, being one-half of the cost of a Keystone excavator to be purchased by him, of which credit 50 per cent. was to be enjoyed forthwith, and the other half was to be given if within two years any of the claims of patent No. 1,511,114 were held to be valid by a District Court. Clutter signed an affidavit prepared by Downie to the effect that the Joplin use was an abandoned experiment, and agreed to assign to the Keystone Driller Company any rights which he might have as inventor or coinventor of the device covered by the patent; but it is quite obvious that the credit which had been agreed upon was given to Clutter upon the implied condition that he should keep secret the details and circumstances of that prior use; that so far as he was able to produce this result the evidence which caused the patentee uneasiness was to be suppressed.

▉▉ The full amount of the initial credit was not given immediately, but in January, 1927, we find the Keystone Driller Company canceling four of Clutter's notes, amounting in all to $1,700 exclusive of interest. Eighteen months thereafter Clutter became financially unable to perform further the terms of his agreement for the purchase of this and another excavator. He was in default upon his notes, and the company was threatening repossession proceedings. Bankruptcy threatened. The District Court had not yet decided the Byers Case, so that the second installment of credit was not yet due; but it would seem that the parties considered the continued silence of Clutter as essential, for in November, 1928, Downie agreed to pay in cash one-half of the second installment of the promised credit, inasmuch as the excavators were being repossessed. One-half of the promised amount of cash was paid by check November 15, 1928, but again, "the other half of the contingent cash credit was not to become payable until and unless our case [the Byers action] should be satisfactorily decided by the end of 1928." The decree in the Byers Case was finally entered January 31, 1929, and it was not until about that time that the payment of any further consideration to Clutter was definitely refused.

The District Court, after an exhaustive consideration of the evidence, a more detailed consideration than can here be given, characterized this conduct of the patentee as "highly reprehensible," but refused to apply the maxim that one who comes into equity must come with clean hands, because during the course of the taking of testimony all of the above-recited facts ultimately came to light, and therefore, it was said, "there was in no sense a suppression of any evidence in these cases." In the first conclusion of the District Court we thoroughly concur; to the second, we cannot agree. Obviously, that which subsequently developed could have no effect upon the nature or quality of the plaintiff's antecedent conduct, or upon the right of the plaintiff to seek the aid of a court of equity as of the date of the filing of the bill of complaint. Pomeroy defines the meaning of the maxim as follows: "It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine." Equity Jurisprudence (4th Ed.) § 397. Doubtless a party may be guilty of such unconscionable conduct during the progress of litigation that a court of equity will refuse him further relief, but in respect of antecedent action it is as of the date of the filing of the bill of complaint that his conduct must be appraised. To hold otherwise would be to insure the malefactor against the injurious effects of his misconduct; if the facts were brought to light, there would be no suppression; if such facts were never disclosed, the fruit of the misdeed would be fully enjoyed. Such cannot be the law. Cf. MacRae v. MacRae, 37 Ariz. 307,

319, 294 P. 280; Carrington v. The Ann. C. Pratt, 18 How. 63, 67, 15 L. Ed. 267.

The maxim is of so ancient an origin that extended analysis of its scope and effect would seem unnecessary. The doctrine is well stated in Deweese v. Reinhard, 165 U. S. 386, 390, 17 S. Ct. 340, 341, 41 L. Ed. 757: "A court of equity acts only when and as conscience commands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity." Again, in Manhattan Medicine Co. v. Wood, 108 U. S. 218, 227, 2 S. Ct. 436, 442, 27 L. Ed. 706, the court adopts the language of the opinion in Fetridge v. Wells, 4 Abb. Pr. (N. Y.) 144, that: "Those who come into a court of equity, seeking equity, must come with pure hands and a pure conscience." See, also, Weegham v. Killifer (D. C.) 215 F. 168, affirmed 215 F. 289, L. R. A. 1915A, 820 (C. C. A. 6), and cases there cited. "Any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience." Pomeroy's Equity Jurisprudence (4th Ed.) § 404.

This last quotation suggests the principal contention of the plaintiff. It is urged that even if the plaintiff wrongfully suppressed evidence, the effect of such suppression was exhausted with the decision of the Byers Case, and thereafter the opportunities to secure such evidence and the relationship of the parties were the same as if no such acts had been performed. Hence, it is said, the wrongful acts, if any, were wholly disconnected with the present controversies and without that direct relation to them which is necessary to constitute a bar. It must be conceded that a court of equity "is not an avenger of wrongs committed at large by those who resort to it for relief" (Kinner v. Lake Shore & M. S. Ry. Co., 69 Ohio St. 339, 69 N. E. 614, 615), and that the wrongful conduct must be in regard to, or at least directly connected with, the matter in litigation. Bentley v. Tibbals, 223 F. 247 (C. C. A. 2); Cropper v. Davis, 243 F. 310 (C. C. A. 8); Pomeroy's Equity Jurisprudence (4th Ed.) § 399. But the necessary connection is not here missing. As long as it was thought desirable, in order to secure an adjudication upon the patent, the hope of reward for silence was held before Clutter. This was the act of the plaintiff as much as of Downie, its officer and moving spirit. The only possible effect of such conduct was to suppress Clutter's testimony, or, if the facts came to the knowledge of the defendant, to make him an adverse or unwilling witness. When the adjudication had been obtained, the plaintiff brought the present actions seeking by motion for an interlocutory injunction to avail itself of the advantages so obtained. Perhaps the necessary connection would have been lacking had the plaintiff elected to treat the patent as unadjudicated, or had based its action only upon the other patents in suit. This we need not decide. It is enough that neither of these courses was pursued, and that the wrongful conduct was in regard to, and directly connected with, one of the matters in litigation, the patent, not simply as a patent, but as an adjudicated one.

The next insistence of the plaintiff is that the alleged misconduct should not be held to constitute a bar since it related to an immaterial matter; the Joplin use being in truth and in fact but an abandoned experiment. At the very least, it is urged, anticipation is not proved with that degree of certainty which is required by the doctrine of The Barbed Wire Patent, 143 U. S. 275, 284, 12 S. Ct. 443, 36 L. Ed. 154, and the cases which have followed it. This seems to us to be immaterial. We are not here and now concerned with a question of anticipation, but of conduct, and certain it is that there was enough in the information communicated to Downie to cause uncertainty and anxiety to him and to the plaintiff, and to bring about the action finally taken. If the conduct was reprehensible, it matters not that it was really unnecessary.

The plaintiff also contends that neither in the Byers Case nor in the present cases was there any obligation upon it to make disclosure of those possible prior uses which might affect the validity of the patents which it owned. This is true; but there was an obligation, in all righteousness and good conscience, not to do that which was done—not to build up a defense against the supposed prior use by buying an affidavit phrased as plaintiff wished it to be phrased, and possibly not in strict accord with the facts, by purchasing Clutter's silence, or at least making him an adverse witness for others, and by continuing the effectiveness of this course of action by making future gain contingent upon a favorable result of the pending action until the very advantage which it was intended should be obtained was at last secured.

Under the above-stated principles we are of the opinion that the plaintiff should have

been denied relief in a court of equity. The decrees of the District Court are reversed, and the causes are remanded, with instructions to dismiss the bills of complaint without prejudice to the prosecution of suits at law, or, indeed, to subsequent actions in equity upon the other patents in suit. Possibly the plaintiff may now have the right to commence anew an action in equity upon all the patents, including patent No. 1,511,114. Upon this we express no opinion. Costs are taxed against the Keystone Driller Company in each of the four appeals now decided.