WOLF v. CITIZENS BANK & TRUST CO.
OF SOUTHERN PINES et al.

No. 4176.

Circuit Court of Appeals, Fourth Circuit.

Sept. 27, 1937.

R. L. McMillan, of Raleigh, N. C. (R. Roy Carter, of Raleigh, N. C., on the brief), for appellant.

U. L. Spence, of Carthage, N. C., for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity instituted in the District Court of the United States for the Middle District of North Carolina in November, 1933, by Joseph Edward Bernstein, a citizen of the state of New Jersey, against Citizens Bank & Trust Company of Southern Pines, a corporation, M. G. Nichols, D. G. Stutz, George C. Abraham, P. F. Buchan, Frank Welch, Jr., and A. McNeil Blair, all citizens of Moore county, N. C., appellees, here referred to as the defendants.

Citizens Bank & Trust Company of Southern Pines is a corporation organized under the laws of the state of North Carolina, and the other defendants were the directors of the bank at the time the suit was begun. The plaintiff, Bernstein, died on the 11th day of October, 1934, and

234 234 234

thereafter Atwood C. Wolf was named as administrator of his estate and was substituted as party plaintiff.

The object of the suit was to have restored to the said Bernstein 250 shares of the stock of said bank, which shares had been sold on July 23, 1933, to pay a 50 per cent. assessment levied on all the stock of said bank for the purpose of allowing the bank to reopen after it had been closed during the general banking holiday created by the Proclamation of the President of the United States (No. 2039 [12 U.S.C.A. § 95 note]) and the Governor of North Carolina in March, 1933 (Pub.Laws N.C. 1933, c. 120).

The defendants answered the bill of complaint and the bank filed a counterclaim against the administrator and the cause came on for hearing at the March term of court, 1936, at Rockingham, N. C. Evidence was taken, and after argument the judge below handed down an opinion, together with his findings of fact and conclusions of law, holding for the defendants, and on September 17, 1936, a decree was entered giving judgment for the defendant bank against the complainant in the sum of $10,912, with interest, dismissing the bill of complaint and decreeing that the costs of the action be paid by the complainant. From this action this appeal was brought.

Bernstein, the deceased, at one time a man of large means and various interests, owned considerable property in the town of Southern Pines, in Moore county, N. C., and maintained a dwelling place there, although his permanent residence and place of citizenship was Jersey City in the state of New Jersey. He owned 250 shares of the 500 shares of the capital stock of the defendant bank, which stock had a par value of $100 per share. He was one of the directors and vice-president of the bank. The bank was closed on March 4, 1933, at the beginning of the general banking holiday, so called, and after an examination of its affairs the Commissioner of Banks of North Carolina declared that the capital structure of the bank had been so impaired that the bank should not be permitted to reopen and continue business until its capital structure should be restored and certain requirements made by him complied with. The Commissioner of Banks required that the stockholders and directors of the bank should levy an assessment upon its capital stock of 50 per cent. of its par value and pay immediately into the bank as much as $24,000 thereof, with no further liability accruing to the bank on account of such payment, and that, moreover, the stockholders reduce the capital stock to 50 per cent. of its then par value.

On March 20, 1933, there was a meeting or conference of the stockholders of the bank at Southern Pines at which Bernstein was present. After consideration and discussion of the affairs of the bank, including the demand of the Commissioner of Banks, the stockholders present, including Bernstein, entered into an agreement that at a meeting to be called for that purpose, each of them would vote his stock for the required reduction in the total capital stock from $50,000 to $25,000, and reducing the par value of the stock from $100 per share to $50 per share.

Pursuant to the understanding had at this meeting certain of the stockholders and officers of the bank proceeded immediately to borrow from one Tracy the $24,000 necessary for the reopening of the bank, pledging their individual credit for the payment thereof, under the provisions of the resolution passed at the meeting of March 20, 1933. This sum was paid into the bank, and the Commissioner of Banks and the Governor of North Carolina authorized the reopening of the bank on March 22, 1933. The bank was opened, and since that date has continued to operate on an unrestricted basis.

At a directors' meeting held on the fourth day of April, 1933, a resolution was passed calling a stockholders' meeting for April 17, 1933.

Bernstein had knowledge of all these circumstances and, upon notice being given to him of the proposed stockholders' meeting, he gave his proxy to H. O. Riggan, president of the bank, with direction to vote his stock for the assessment of the stock and the reduction of the capital stock in accordance with previous plans and agreements. It developed that Bernstein's stock in the defendant bank had since the year 1932 been pledged with Hudson County National Bank of Jersey City, N. J., as collateral security for a loan to Bernstein of approximately $19,000, although remaining in Bernstein's name on the records of the defendant bank. The Hudson County National Bank sent its trust officer, one Bernhard, to Southern Pines to investigate the situation, and Bernhard was told

of the stockholders' meeting to be held on April 17, and that Riggan held Bernstein's proxy to vote his stock. On Bernhard's return to Jersey City a conference was held with Bernstein, the president of the Jersey City Bank, and its chief counsel, and Bernstein was informed that he had no right to take the measures he had taken with regard to the stock because he had pledged it as collateral and Bernstein executed and delivered to Bernhard a revocation of the proxy to Riggan and executed and delivered to Bernhard a new proxy to vote the Bernstein stock at the meeting to be held April 17, 1933.

Bernhard returned to Southern Pines on April 17, 1933, and prior to the meeting of the stockholders presented to Riggan the revocation of Bernstein's proxy to Riggan, and also presented to him the new proxy given to Bernhard and asked that the meeting be continued in order that he, Bernhard, might have opportunity and time to consider the situation. The meeting, however, proceeded, the revocation of Bernstein's proxy to Riggan was not recognized, and the meeting also refused to recognize the Bernhard proxy. The minutes of this stockholders' meeting set forth that the capital stock would be reduced 50 per cent., and that there would be a 50 per cent. assessment on all of the stock, and it was proposed to amend the bank's charter accordingly.

Bernhard protested against the action taken at the meeting and demanded the right to vote the Bernstein stock, which he was not allowed to do, Riggan voting the stock under his proxy.

The following day Bernhard, through his attorney, filed a protest, with the Secretary of State of North Carolina, objecting to the proposed amendment of the bank's charter on the ground that the meeting was not legal and that such action as was taken was void.

Thereafter substantially all of the stockholders paid their assessments with the exception of Bernstein, who refused to pay. Following this refusal the capital stock of the bank held in the name of Bernstein was, after notice, sold at public auction and purchased by one of the directors of the bank at the price of $6 per share, the purchase being made for the benefit of those who had obligated themselves to repay Tracy the $24,000 borrowed money. It was noted upon the records of the bank that the Bernstein certificate was canceled and a new certificate issued in the name of one W. C. Mudgett, who now holds the same for the benefit of the persons obligated on the $24,000 loan. In the answer of the defendants an offer was made to restore to Bernstein his capital stock whenever he would pay the assessment levied thereon, and during the trial of the cause the same offer was made to the administrator, the present complainant.

At the sale of the stock Bernstein, through his representative, announced that the sale was illegal and objected to it, but the sale proceeded.

It is apparent from the record that the estate of the deceased Bernstein is insolvent.

The sole question involved is whether the bank stock owned by Bernstein was lawfully chargeable with the 50 per cent. assessment.

The court below found the facts as stated and specifically found that Bernstein, at the meeting on March 20, 1933, agreed with the other stockholders and directors of the bank to the stock assessment of 50 per cent. and that the $24,000 necessary to be raised as a condition of the reopening of the bank, should be borrowed to be paid out of the assessment.

The money was borrowed, certain of the stockholders pledging their personal credit to secure it. Bernstein gave his proxy to Riggan to be voted at the meeting of April 17, 1933, for the purpose of carrying out the agreements made on March 20, to which agreements Bernstein was a party. It is true that before the meeting of April 17 was held Bernstein attempted to revoke this proxy at the request of officials of the Hudson County National Bank. The question presents itself whether the original proxy was not so coupled with an interest as to make it irrevocable until the purposes for which it was given were accomplished.

The $24,000 had been borrowed and paid in as an asset of the bank with no accompanying obligation on the part of the bank. The bank had been reopened and was successfully doing business. Bernstein had knowledge of all that was done and was morally bound to help carry out the arrangements. He undoubtedly profited by what was done. Had the bank not reopened he would, in all probability, have been liable for a 100 per cent. assessment on his stock. The Hudson County National

Bank, while holding Bernstein's stock as a pledge, had not had the stock transferred on the books of the Citizens Bank & Trust Company and Bernstein had the right to vote the stock or give the proxy to Riggan. Consolidated Statutes N.C. § 1174; Finefrock v. Kenova Mine Car Company (C.C.A.) 22 F.(2d) 627, 629. Under these circumstances the New Jersey Bank would not be heard to complain of Bernstein's actions with regard to the pledged stock. Likewise, the present plaintiff, Bernstein's executor, standing in Bernstein's stead, will not be heard to complain of Bernstein's acts.

These facts being admitted, it follows that the plaintiff does not come into the court with a cause that would appeal to the conscience of a chancellor. He does not come with clean hands.

As was said by Mr. Justice Harlan in Abraham v. Ordway, 158 U.S. 416, 15 S. Ct. 894, 895, 39 L.Ed. 1036: "Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law."

A court of equity functions only to relieve a wrong, not to perpetuate one. Here Bernstein's executor seeks the benefit of the course taken to preserve the bank of which Bernstein was the principal stockholder, a course to which Bernstein was pledged, without in any way contributing to the necessary cost of the action taken. Certainly Bernstein himself would be estopped, in equity, from pursuing the very course his executor asks the court to direct shall be pursued for the benefit of his estate. No cause justifying equitable relief is shown, and the plaintiff is left to enforce any right he may have, if he has any right, in a court of law.

■ As was said by Mr. Justice Brewer in Deweese v. Reinhard, 165 U.S. 386, 17 S. Ct. 340, 341, 41 L.Ed. 757: "The right, whatever it may be, and from what source derived, must be not only one not protected by legal title, but in and of itself appealing to the conscience of a chancellor. A court of equity acts only when and as conscience commands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

A discussion of the principles here involved will be found in Keystone Driller Company v. General Excavator Company, 290 U.S. 240, 54 S.Ct. 146, 147, 78 L.Ed. 293, where Mr. Justice Butler says: "The governing principle is 'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' Pomeroy, Equity Jurisprudence, (4th ed.) § 397."

■ The bank reopened for business on March 22, 1933, and the action of the board of directors complained of by Bernstein was taken on April 17, 1933, yet Bernstein did not bring this suit until November 20, 1933. In the meantime it had been demonstrated that the reopening of the bank was successful. From this delay the judge below found that Bernstein had been guilty of laches in waiting to see how the venture of reopening the bank would turn out and would not be heard to assert his rights after this unexplained delay. There is ample authority to support this position.

■ "The time at which parties invoke the aid of a court of equity is often a significant factor in determining the extent of their rights." New York v. Pine, 185 U. S. 93, 22 S.Ct. 592, 594, 46 L.Ed. 820. See, also, Twin-Lick Oil Company v. Marbury, 91 U.S. 587, 23 L.Ed. 328; Johnston v. Standard Mining Company, 148 U.S. 360, 13 S.Ct. 585, 37 L.Ed. 480; Alsop v. Riker, 155 U.S. 448, 15 S.Ct. 162, 39 L.Ed. 218.

It is also apparent, as held by the judge below, that the officials of the Hudson County National Bank were wrong in telling Bernstein, as they unquestionably did,

that he had no right to give his proxy to Riggan and in that way influencing him to revoke it.

Exceptions were taken by the appellant to the admission of certain evidence and the point raised on behalf of the appellees that these exceptions were not properly taken. We do not find any harmful error in the admission of this evidence, and the question of whether the exceptions were taken at the proper time is therefore immaterial.

Questions are raised· on behalf of the appellees as to whether the appellant docketed the case in this court within the time required by the rules, and as to the right of the administrator appointed by a New Jersey court to prosecute this suit without an ancillary administration in North Carolina, but, in view of our conclusion as stated above, it is not necessary to consider these points.

The decree of the court below is affirmed.

Affirmed.