AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, Plaintiff-Appellee, *v.* LAWRENCE F. LEVY, Defendant.—(JOSEPH D. JUDAH, Plaintiff and Counterdefendant-Appellee; HAWTHORN REALTY GROUP, INC., Defendant and Counterclaimant-Appellant.)—HAWTHORN REALTY GROUP, INC., Plaintiff-Appellant, *v.* JOSEPH D. JUDAH, Defendant-Appellee.

First District (4th Division) Nos. 78-1097, 78-1789 cons.

Opinion filed May 1, 1980.

Stephen J. Spitz, of Chicago, for appellant.

N. A. Giambalvo, of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

These consolidated cases arise from a dispute over a real estate brokerage commission. The Hawthorn Realty Group, Inc. (Hawthorn), appeals from an order dismissing its counterclaim for a brokerage commission and from an order dismissing its complaint in a subsequently filed action for the same commission.

American National Bank & Trust Company of Chicago (American National) and Joseph D. Judah filed a complaint against Lawrence F. Levy and Hawthorn on July 29, 1977, in the chancery division of the circuit court of Cook County. The complaint alleged that Hawthorn and Levy planned to file a wrongful claim for a brokerage commission and that American National and Judah would be irreparably harmed by this action. The trial court entered a temporary restraining order on August 2, 1977, which precluded Levy and Hawthorn from taking any legal action except for filing "pleadings and documents appropriate to" the action then before the court. On August 9, 1977, Hawthorn filed an answer and a counterclaim against Judah. The counterclaim sought money damages for Judah's alleged breach of contract to pay Hawthorn a brokerage commission.

On September 30, 1977, Judah filed a motion to dismiss Hawthorn's counterclaim "for want of equity for reason of the fact that [Hawthorn] is coming into equity with unclean hands." No other ground for dismissal was stated. Judah submitted a transcript of a deposition and an affidavit containing excerpts of the deposition in support of his allegation that Hawthorn was guilty of unclean hands. On October 11, 1977, the court entered an agreed order that various depositions be admitted into evidence.

The parties appeared in court on October 13, 1977. Without hearing argument, the court stated that it was going to dismiss Hawthorn's counterclaim for want of equity because testimony contained in two of the depositions showed that Hawthorn had unclean hands. This decision was made "without deciding whether [Hawthorn is or is not] entitled to a commission." The court stated that Hawthorn could "proceed in the Law Division." At Hawthorn's request the court agreed to postpone its ruling and to hear testimony and argument on the motion. The court emphasized that the hearing would be solely on the issue of "whether or

not [Hawthorn is] in this court with clean hands" and stated that if Hawthorn did not produce evidence to rebut what it referred to as a *prima facie* case of unclean hands, the cause would be dismissed on Judah's motion. During this hearing, which involved numerous court appearances over a period of several months, Hawthorn tried to establish that (1) the clean hands doctrine was inapplicable as Hawthorn's claim was purely legal, and (2) even if the court found the doctrine to be applicable, Hawthorn was not guilty of unclean hands. The court several times limited argument to those issues and cautioned counsel not to argue the issue of whether or not Hawthorn was entitled to the commission.

After the parties completed their closing arguments, the court stated:

"Gentlemen, first of all I want to make it clear that I am not at this time and I have not reached the issue of whether or not Hawthorn is entitled to a commission. We haven't even come close to hearing evidence on that particular issue.

What I am concerned with here is, I've said it at the beginning of this hearing, I wanted to hear evidence on the question of unclean hands and that is the only thing that I've been concerned with as well as, of course, the question of this being simply an issue of law for a commission."

The court ruled that the clean hands doctrine barred Hawthorn's counterclaim, and stated:

"This is a Court of Equity. I do not sit here in the Chancery Division as a law judge. I sit here as a chancellor. And I am therefore going to dismiss this case on the grounds of unclean hands and also on the secondary grounds that this is an action for commission, which is a Law Division case.

If you wish you may file the case in the Law Division. And I have not reached any finding or decision as to whether or not you may prevail there."

On March 31, 1978, the court entered an order dismissing Hawthorn's counterclaim. The court made several findings including a finding that Hawthorn had failed to communicate material facts to Judah and that Hawthorn breached its fiduciary obligations to Judah. The counterclaim was then dismissed "upon the doctrine of unclean hands" and upon the secondary basis that the counterclaim was "a law division case." Hawthorn filed a notice of appeal from this order.

On July 26, 1978, Hawthorn filed a complaint against Judah in the law division for a brokerage commission. The law division complaint differed from the equity counterclaim only in that additional counts for novation/waiver, restitution and fraud were pled against Judah. Judah filed a motion to strike the complaint on the basis that the action was barred by *res judicata* and/or estoppel by judgment and on the alternate

ground that the appellate court had exclusive jurisdiction of the subject matter. On September 26, 1978, the court granted Judah's motion and dismissed Hawthorn's complaint with prejudice.

The first issue on appeal is whether the clean hands doctrine, an equitable maxim, operates to deny strictly legal rights. Judah asserts that the doctrine is applicable to both equity and law actions. He cites as authority *Kuehnert v. Texstar Corp.* (5th Cir. 1969), 412 F.2d 700, and *Union Pacific R.R. Co. v. Chicago & Northwestern Ry. Co.* (N.D. Ill. 1964), 226 F. Supp. 400. Neither case, however, involved a common-law action. Rather, both decisions involved actions arising under Federal securities laws (the Securities and Exchange Act of 1934, §1 *et seq.*, as amended, 15 U.S.C. §78a *et seq.* (1976)) and were expressly predicated upon the public policy aims of that legislation. Neither decision is relevant to this appeal where no such legislatively protected public policy is at issue.

 █ Generally, the clean hands doctrine operates to bar equitable remedies and does not affect legal rights. (*Manufacturers' Finance Co. v. McKey* (1935), 294 U.S. 442, 79 L. Ed. 982, 55 S. Ct. 444; *Universal Builders, Inc. v. Moon Motor Lodge, Inc.* (1968), 430 Pa. 550, 244 A.2d 10; 30 C.J.S. *Equity* §98, at 1037-38 (1965).) This doctrine only extends as far as denying specific relief because a plaintiff acted in an improper manner. Even though the contract itself cannot be cancelled, equity will not interfere with an action at law for its breach. (McClintock, Equity §26, at 62 (2d ed. 1948).) In *Deweese v. Reinhard* (1896), 165 U.S. 386, 390, 41 L. Ed. 757, 759, 17 S. Ct. 340, 341, the court wrote:

> "A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

Clearly, the equitable defense of unclean hands did not bar Hawthorn's action at law. The application of that principle is made most apparent by the trial judge in his various statements.

Judah next asserts that the record contains evidence of and the court made findings that Hawthorn breached its fiduciary obligations to Judah and failed to communicate material facts to Judah. He contends that the dismissal of Hawthorn's claim should be affirmed on one or both of these grounds even if the stated reasons for dismissing the claim were incorrect. While it is the general rule, as Judah asserts, that a judgment "may be sustained upon any ground warranted by the record, irrespective of whether the particular reasons given by the trial judge or the specific findings are correct" (*Monarski v. Greb* (1950), 407 Ill. 281, 291, 95 N.E.2d 433, 439; see also *City of Rockford v. Maxwell* (1968), 92 Ill. App. 2d 336,

340, 234 N.E.2d 563, 566), it would not be appropriate in the instant case to affirm the dismissal on the grounds now asserted by Judah.

Judah's motion to dismiss was based on the argument that Hawthorn could not come into the court of equity with unclean hands. Breach of fiduciary duty and failure to communicate material facts were considered only in light of the issue before the court, that is, whether the court, sitting in equity, would act on behalf of Hawthorn if Hawthorn was guilty of inequitable conduct. The situation here is rather anomalous since there was no equitable proceeding then pending. The only proceeding pending concerned an action at law for money damages. There is indeed a question concerning whether or not any fiduciary duties were actually involved in the relationship between Hawthorn, a real estate broker who responded to an open listing, and Judah, the owner of the property.

Putting those issues aside, we believe the court's findings of breach of fiduciary duty and failure to communicate material facts cannot bar Hawthorn's substantive claim for its commission. First, this being an action at law Hawthorn cannot be denied its right to request a jury trial on the factual issues underlying its claim for a real estate commission. Secondly, the proof necessary to warrant the judge sitting in equity to exercise his discretion in saying that he would refuse to consider any affirmative equitable relief because of the defendant's unclean hands is less than the proof necessary for a finding of fact that Hawthorn breached its fiduciary duty. As is stated in McClintock's treatise (McClintock, Equity §72, at 197 (2d ed. 1948)), it takes "less inequity" to defeat affirmative relief in a court of equity than to call upon its affirmative aid to cancel a contract.

■ It was also error to dismiss the counterclaim because it was "a law division case." There is only one circuit court in a circuit. (Ill. Const. 1970, art. VI, § 7(b).) The circuit court of Cook County has been, as a matter of administrative convenience, divided into divisions. (Ill. Const. 1970, art. VI, §7(c); Ill. Rev. Stat. 1977, ch. 110A, par. 21(b); Circuit Court of Cook County General Order No. 1-2.) That this cause might have been more conveniently heard in another division of the circuit court of Cook County is not a basis for dismissal. Administrative convenience and not jurisdiction was at issue. The circuit court of Cook County rules specifically require that a cause be transferred if it has been filed or is pending in the wrong division. Circuit Court of Cook County General Order Nos. 1—3(b) and 1—3(c); *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.

The dismissal of Hawthorn's complaint in the law division was predicated upon the order dismissing Hawthorn's counterclaim in the chancery division. Therefore, our reversal of the dismissal of Hawthorn's counterclaim in the chancery division requires the reversal of the

dismissal of Hawthorn's complaint in the law division. Both orders of dismissal are vacated and the cause is remanded to the circuit court to be tried in the appropriate division.

Reversed and remanded.

LINN, P. J., and ROMITI, J., concur.