**LCI INTERNATIONAL TELECOM CORP., INC., Plaintiff,**

v.

**AMERICAN TELETRONICS LONG DISTANCE, INC., Globalone, Inc., and Capital One, Inc., Defendants.**

No. 95 C 5875.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 24, 1997.

Robert Kaiser Neiman, James Wilson Marks, Michael Joseph Silverman, Harold B. Hilborn, Holleb & Coff, Chicago, IL, for LCI Intern. Telecom Corp., Inc.

Hugh Gerald McBreen, Annie K. Strobl, John R. Ostojic, McBreen, McBreen & Kopko, Chicago, IL, for American Teletronics Long Distance, Inc.

Hugh Gerald McBreen, Annie K. Strobl, McBreen, McBreen & Kopko, Chicago, IL, for Globalone, Capital One, Inc.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, LCI International Telecom Corp., Inc. ("LCI"), filed suit against the defendants, American Teletronics Long Distance, Inc. ("ATLD"), GlobalOne, Inc., and Capital One, Inc., to recover an account stated of $178,000 for telecommunications services that LCI allegedly provided to the defendants. The defendants filed a counterclaim against LCI alleging that LCI converted $110,000 that it received from American National Bank via wire transfer. LCI has moved for partial summary judgment on this counterclaim as well as on certain affirmative defenses raised by defendants. LCI's motion is granted in part and denied in part.

### Background

From July 1992 until May 2, 1995, LCI provided telecommunications services to Standard Telecom Long Distance ("STI"), a wholly owned subsidiary of Value–Added Communications ("VAC"). Using the services provided by LCI, STI supplied long distance telecommunications services to its customers, but was in arrears on its pay-ments to LCI for these services. On September 1, 1995, LCI, STI and VAC entered into a settlement agreement regarding these past due amounts. Under the terms of the agreement, LCI released and discharged STI, VAC, and their "assigns, partners, predecessors, successors, subsidiaries, all affiliated corporations, owners, shareholders, departments, divisions, and any third person who could conceivably have liability arising from the acts of Standard Telecom, Inc. or Value–Added Communications, Inc. ...." In exchange for this release, STI and VAC agreed to pay $110,000 to LCI immediately. STI and VAC made this payment to LCI on September 5th via a wire transfer from American National Bank.

These funds came from a lockbox at American National Bank. That lockbox had been established pursuant to a settlement agreement between STI, VAC, ATLD, American National Bank, and others on May 11, 1995 ("STI–ATLD Agreement"). This agreement was executed in order to settle the amounts which STI and VAC owed to ATLD and American National Bank. The agreement provided that two lock boxes would be set up [1] for the collection of receivables from STI and VAC's end users. All receivables generated prior to May 1, 1995 would be deposited in one lockbox. After payment of taxes and a lump sum to American National Bank, the agreement provided that ATLD would receive 5/8 of receivables and STI and VAC would take the remaining 3/8.

Any receivables generated after May 1st were to be deposited in the second lockbox. ATLD took a security interest in these future receivables for an amount equal to usage fees by WilTel. According to the agreement, the funds in this lockbox would be distributed monthly with ATLD first receiving an amount equal to the WilTel usage fees and STI receiving the remaining balance.

The defendants allege that LCI converted the $110,000 that was held in the lockbox. They contend that the funds did not belong to STI when it transferred them to LCI. LCI argues that the wire transfer is not

---

1. The record is unclear whether two lock boxes actually were set up or if only one was used to handle all of the amounts deposited.

subject to an action for conversion because it represents an intangible right. In the alternative, LCI argues that the defendants were entitled to only a percentage of the sum in the lockbox, and an action for conversion will not lie for an indeterminate amount of money.

### Conversion Counterclaim

 Under Illinois law, a claim for conversion must be based on a specific, identifiable chattel. *General Motors Corp. v. Douglass*, 206 Ill.App.3d 881, 151 Ill.Dec. 822, 827, 565 N.E.2d 93, 98 (1st Dist.1990). A general debt or obligation cannot be the subject of a conversion claim. *Id.* 151 Ill.Dec. at 829, 565 N.E.2d at 100. If the party alleging conversion only has a right to an indeterminate portion of the amount at issue, the conversion claim fails. *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir.1989)[2].

 The STI–ATLD agreement established two methods for dividing the receivables in the lockbox. The first method, for receivables generated prior to May 1, 1995, was a split of 5/8 for ATLD and 3/8 for STI and VAC. The second method, for receivables generated after May 1, 1995, gave ATLD an amount equal to the WilTel usage fees and gave STI the balance of the account. In theory, the defendants would not be entitled to specifically identifiable funds from the lockbox. The amounts would be indeterminate sums because they would vary depending on the level of receivables and, in the case of the second method, on the level of WilTel usage fees.

In actual application, however, the defendants may have had a right to the entire amount in the lockbox. Neither party has provided the Court with any documents or other information which indicates the amount of receivables in the lockbox on September 5, 1995, and the origin of those receivables. If any of the receivables were generated prior to May 1, 1995, then STI and VAC would own 3/8 of that amount, and the defendants would only have a claim to an indeterminate sum. If any of the receivables were generat-

ed after May 1, 1995, but were more than the amount of WilTel usage fees, then STI and VAC would have a claim to the excess amount, and the defendants again could only claim an indeterminate sum. If, however, the receivables were generated after May 1, 1995, and they amounted to less than the WilTel usage fees, then the defendants would be entitled to the entire amount in the lockbox which would be a specific and determinable sum of money. The evidence submitted by the parties does not establish which of the above scenarios is applicable.

The defendants submitted affidavits from John Paulsen, former president of ATLD, and Frank Aulenta, president of American Teletronics. Both Mr. Paulsen and Mr. Aulenta assert that they reviewed WilTel usage invoices and that the invoice amounts are greater than the amount of receivables in the lockbox. Mr. Aulenta's affidavit is contradicted by his deposition testimony. Mr. Aulenta's affidavit, dated October 31, 1996, states that Wiltel is owed $807,654.88 based on usage by STI's end users from May–December 1995. In his deposition testimony, dated November 29, 1996, Mr. Aulenta stated that he was not aware of any usage fees that were owed by STI to WilTel in 1995. Aulenta Dep. at 58. Furthermore, not only do these affidavits fail to establish the origin of the receivables, but they specify no particular date on which the usage fees exceeded the receivables. LCI has moved to strike these affidavits for lack of personal knowledge and failure to authenticate the WilTel invoices. Given that neither affiant states the source of the funds in the lockboxes, as well as Mr. Aulenta's contrary deposition testimony, the motion to strike is granted.

Both LCI and ATLD also point to the deposition testimony of Hugh McBreen. Mr. McBreen is an attorney who represents ATLD and was involved in the drafting of the STI–ATLD Agreement. Mr. McBreen's testimony on this subject does not resolve the material issues of fact in this case. First, he neither testified about the mix of receivables (i.e. those before and after May 1, 1995)

---

**2.** I earlier denied a motion to dismiss this claim, finding that the pleadings stated a claim for relief. Contrary to defendants' argument, that ruling does not determine whether the evidence will support their counterclaim.

that were in the lockbox nor did he discuss the amount of Wiltel usage fees owed by STI. Second, with respect to the division of receivables generated after May 1, 1995, Mr. McBreen testified that if the end users were customers of STI, then STI would be entitled to a portion of the receivables. McBreen Dep. at 15. If the end users were ATLD's customers, then STI would not be entitled to any of the receivables. *Id.* To the extent that Mr. McBreen's statement is correct, these statements do not tell me which end users' receivables were in the lockbox on the date at issue. Without this information, I cannot determine whether the amount in the lockbox was an indeterminate sum.

■ LCI also has submitted as evidence ATLD's complaint for declaratory relief filed in bankruptcy court in the Northern District of Texas. In that complaint, ATLD stated that it had agreed with STI and VAC to divide the receivables generated after May 1, 1995 according to a 79%/21% split in favor of ATLD. ¶ 9. ATLD makes no mention of end-users or the amount of WilTel usage. Instead, it states that this percentage split was "sufficient to allow ATLD to cover all of its expenses for using the WilTel long-distance network...." *Id.* Although this evidence tends to show that the amount in the lockbox was indeterminate, *see Sutherland*, 882 F.2d at 1200, it is not conclusive. A pleading from one proceeding is admissible as evidence in another proceeding, but such evidence does not constitute a judicial admission and therefore is not binding or conclusive. *Enquip, Inc. v. Smith–McDonald Corp.*, 655 F.2d 115, 118 (7th Cir.1981). In the absence of any other evidence showing no genuine issues of material fact, I cannot grant summary judgment solely on the basis of an admission in a pleading in another case. *Id.*

### Affirmative Defenses

■ LCI has moved for summary judgment on three of the defendants' affirmative

defenses. With respect to two of them, LCI's motion is granted. The defense of unclean hands is inapplicable to this action. The plaintiff's action is based on an account stated.[3] It seeks money damages. This is a legal remedy. Unclean hands is an equitable remedy and has no application in an action for money damages. *Consolidated Int'l Corp. v. Profexray Division, Litton Medical Prods., Inc.*, No. 73 C 1499, 1974 WL 821, at *1 (N.D.Ill. Jan.4, 1974); *American Nat'l Bank & Trust Co. v. Levy*, 83 Ill.App.3d 933, 39 Ill.Dec. 355, 357, 404 N.E.2d 946, 948 (1st Dist.1980).

■ LCI's motion for summary judgment is also granted with respect to defendants' estoppel defense. The elements of estoppel are: "(1) a party has acted; (2) another party reasonably relied on those acts; and (3) the latter party thereby changed its position for the worse." *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F.Supp. 1224, 1231 (N.D.Ill.1996). The defendants' estoppel defense is based on LCI's failure to acknowledge or assent to the terms of two letters sent by ATLD and GlobalOne.[4] In response to LCI's motion for summary judgment, defendants have not produced any evidence that they relied to their detriment on LCI's alleged failure to acknowledge and assent to the letters. Since reliance is an essential element of an estoppel claim, summary judgment is appropriate.

### Conclusion

LCI's motion for summary judgment on the defendants' counterclaim is denied. LCI's motion for summary judgment on the defendants' affirmative defenses of unclean hands, accord and satisfaction, and estoppel is granted.

---

3. I have today granted plaintiff's motion to amend its complaint to add a breach of contract claim.

4. On May 18, 1995, ATLD sent a letter to LCI stating that ATLD and its financing partner, Capital One, had contracted with STI's customer base and assumed all payment liabilities for calls generated by STI's customer base after May 3,

1995. On July 18, 1995, Global One and Capital One sent a similar letter to LCI regarding their assumption of payment liabilities for all calls involving the LCI international network. Only the July 18th letter requested that LCI acknowledge the letter and return it with the signature of an LCI officer.