**META A. SAHLER v. ELI I. SAHLER, PAUL D. SAHLER, HERBERT J. SAHLER and FREDA SAHLER DECKER.**

17 So. (2nd) 105                    January Term, 1944
February 25, 1944                    Special Division B

*Clark W. Jennings,* for appellant.
*Walter Warren* and *Clayton J. Weir,* for appellees.

WELCH, Circuit Judge:

This is an appeal taken by the defendant and cross plaintiff in the court below from a final decree in a divorce suit, which decree was signed August 17, 1943, as of July 12, 1943, and filed August 26, 1943. (For convenience, appellant here will be referred to as the defendant, and appellees as the plaintiff.) The plaintiff, below, died July 28, 1943. After the entry of the final decree, the court on motion for revivor filed by defendant and cross plaintiff ordered that the appellees herein be substituted as parties plaintiff, and appointed an administrator ad litem.

On March 23, 1943, the plaintiff below, Jesse D. Sahler, brought a suit for divorce against the defendant below, Meta A. Sahler, in the Circuit Court for Lake County, Florida. On April 15, 1943, he filed an amended bill of complaint, in which the necessary jurisdictional residence qualifications were alleged, and charged the defendant with extreme cruelty and desertion; he also alleged that no children had been born of their union. On May 3, 1943, defendant answered the amended bill of complaint, in which answer she denied knowledge of plaintiff's residence; denied his allegations of cruelty; denied that she had been guilty of desertion; and admitted that no children had been born of their union.

Defendant's answer also contained a cross complaint, or counter claim, in which she described certain properties in New York and Florida and alleged that said properties were held by her and the plaintiff as estate by the entirety. She charged the plaintiff with having been guilty of extreme cruelty to her and of displaying a violent temper toward her, and prayed for a divorce, a division of the property, for alimony and other relief. To this counter claim plaintiff filed a reply in which he admitted the ownership of the property described and denied the alleged grounds for divorce.

On July 12, 1943, the testimony of the parties was taken

before the court and transcribed by the court reporter. Upon the completion of the taking of testimony the cause was submitted to the chancellor below on final hearing. At the conclusion of the hearing the chancellor made certain verbal statements to the effect that a decree of divorce should be granted without specifying, but expressly withholding, in whose behalf the decree should be granted. The chancellor further announced that the evidence showed that the parties held an estate by the entirety in the property in the states of New York and Florida and expressed the opinion that the property should be equally divided between the parties, except as to one piece of property in the State of Florida, the deed to which included the name of the son of the plaintiff. In that particular case chancellor stated that the interest of the son should be taken from the interest of the plaintiff husband, and not effect the defendant wife's interest. The chancellor then expressed the wish that the parties would choose their interest in the estate, and requested the attorneys to draw a decree which would expressly partition the property, or divide the property, between the parties by express description, and to make conveyances. The chancellor also announced that plaintiff should pay the defendant for her counsel fees and the cost of the suit. No written decree was prepared on that day and presented to the court, but such preparation was delayed pending agreement between the parties as to the respective properties to be held by each.

After the hearing and on, to wit, July 28, 1943, the plaintiff died; and on, to wit, August 17, 1943, the chancellor below entered a decree "nunc pro tunc," in which it was decreed that a divorce *between* the parties be granted as of the date of July 12, 1943, and an allowance was made to the defendant for attorney's fee. The chancellor further stated in said decree.

"That no decree can now be entered as to a division of the property, leaving that as a matter of law."

The record contains five assignments of error, but the writer is of the opinion that only the first three assignments are necessary to be discussed on this appeal, which are as follows:

"1. The court erred in entering its final decree of August 17, 1943, filed for record August 26, 1943, whereby defendant's motion to dismiss or abate the cause upon suggestion of the death of the original plaintiff, Jesse D. Sahler, was denied.

"2. The court erred in entering its said final decree, whereby it granted a divorce nunc pro tunc as of July 12, 1943, when the record shows that the original plaintiff, Jesse D. Sahler, died between said July 12 and the date of said decree.

"3. The Court erred in entering its said final decree to the effect that 'a decree of divorce between the parties to this suit be and the same is hereby granted' without specifying in whose favor and against whom said decree was entered, when the record shows that both parties were seeking a divorce."

Assignments of error numbers one and two may be discussed together. The main question raised by these assignments being whether or not a court of equity can enter a decree of divorce, nunc pro tunc, after the death of one of the parties. Plaintiff, (appellees here), contends that the court announced its decree on July 12, 1943, after the cause had been submitted to the court, all evidence had been taken, all arguments of counsel had been made, and that nothing remained to be done except the ministerial act of entering the decree, and that therefore the court had the authority to enter its written decree, "nunc pro tunc," as of the date of the oral announcement. The writer is unable to agree to this contention, but even if that was the law, the record discloses an entirely different state of facts. A casual reading of the "Nunc pro tunc" decree will disclose that the chancellor never announced any final decree at the conclusion of the hearing, in the aspect most favorable to the plaintiff, the most that can be said of them is that the chancellor had announced certain things that he desired to be incorporated in the final decree when it was prepared and entered. The chancellor stated that he thought a divorce should be granted, but he didn't say to whom it should be granted. He stated that he thought the property should be divided in certain pro-

portions, but he didn't make any division of the property, and he expressed the wish that the parties, through their counsel, would get together and agree on a division. By no rule of construction, or any process of reasoning, known to the writer, could such oral pronouncements by the chancellor be construed to be a final decree; however, it is the opinion of this writer that had the chancellor announced a decree, that such decree would not have been effective until it had been reduced to writing, signed by the judge, and recorded in the chancery order book, as provided in Section 62.16 Florida Statutes, 1941. In the case at bar no decree had been signed by the chancellor, or filed for record, or recorded, and not even a definite pronouncement had been made as to all of the things the final decree would contain if and when it was signed and recorded, prior to the death of the plaintiff.

The writer is of the opinion that the weight of authority in this country relative to the authority of courts to enter "nunc pro tunc" decrees in divorce suits is to the effect that a "nunc pro tunc" decree cannot be entered where one of the parties to a divorce dies before the rendition of a decree.

In Anno. 3 A.L.R., page 1421, it is stated, "Where a party to a divorce suit dies before the rendition of a decree, none can be entered nunc pro tunc."

Citing Wilson v. Wilson, 73 Mich. 620, 41 N.W. 817; Young v. Young, 165 Mo. 624, 88 Am. St. Rep. 440, 65 S.W. 1016; and other authorities.

"Thus where complainant in divorce died after submission, it was error to enter a decree for him, nunc pro tunc."

Citing Wilson v. Wilson, supra; and in Freeman on Judgments, 5th ed., Sec. 135, it is stated, "Obviously there can be no judgment of divorce rendered after the death of either of the parties, since that event of itself terminates the status of marriage. Consequently where a party to a divorce suit dies before the rendition of a decree, none can be entered. . ."

This Court, speaking through Mr. Chief Justice Davis, in Price v. Price, 114 Fla. 233, 153 So. 904, said, "It is undoubtedly the law that the marital relation, being a purely personal one, is terminated by the death of either of the parties and

that a suit for divorce is purely a personal action which cannot survive the death of either party."

However, in that same case it was also held that an appeal would lie to this Court to reverse an erroneous decree, this Court stated, "While both parties to a divorce decree live, an appeal from it lies in this Court to reverse an erroneous decree of divorce; the effect of such reversal being to restore both parties to their former status as husband and wife, in law. And after the death of one of such parties it is said by the weight of authority that it ought to lie in favor of the other party, not for the same purpose, but to restore the survivor to his or her rights of property divested erroneously by the decree appealed from . . . ."

Under the third assignment of error it is asserted that the Court erred in entering a decre of divorce *between* the parties to the suit without specifying in whose favor and against whom the decree was entered, when the record showed that both parties were seeking a divorce.

In Florida the grounds for divorce are statutory.

Section 65.04 Florida Statutes, 1941, provides, "No divorce shall be granted unless one of the following facts shall appear:"

And then sets out nine grounds for divorce. And as I construe the Statute in all cases of divorce, except those cases that are brought on ground number one, or ground nine, it is incumbent upon the party seeking the divorce to prove that his or her adversary is guilty of the ground, or grounds, alleged in the bill of complaint before a divorce should be granted. The statute, itself, as to grounds three, four, five, six and seven, uses this language, "That the defendant has been guilty of . . . ."

It therefore seems to me that it is the purpose of the Statute to grant relief to the innocent party, even though the effect of a decree of divorce in Florida is to release both parties from the bonds of matrimony. This construction, it appears to the writer, is in line with the maxims of equity to the effect that equity will not permit a party to profit by his wrong doing, and he who comes into equity must come with clean hands; it therefore seems to me that it is incumbent upon the court to find, as a matter of fact, from the

evidence in the case, who is at fault and to grant the relief to the innocent party; and where both parties are at fault to withhold relief from both of them; I think it was Mr. Justice BROWN who said in one of his opinions, that where both parties were in the wrong equity would let them "Stew in their own juice." This writer is not unmindful of the Per Curiam decision of this Court in the case of Williamson v. Williamson, reported in 14 So. (2nd) at page 712, in which the Court said:

"In the case of Gregg Maxcy, Inc., v. Bateman, 119 Fla. 490, 160 So. 745, this Court approved and commended a chancellor in making decretal findings in an equity case. We adhere to and re-affirm this ruling, but a failure on the part of a chancellor to make such specific findings of fact in an equity suit is not reversible error. Authorities supporting counsel's contention have not been cited."

I do not know the correct interpretation that should be placed upon the above quoted language of the Court, but if it is to be construed as a precedent for the granting of a divorce in cases where both parties are at fault, it is the writer's opinion that this case should be overruled. Incompatibility of temperament is not a statutory ground for divorce in this State, and until the Legislature sees fit to make it so it is my opinion that this Court should not attempt it.

I don't think that I could better express my views on the question than to quote from the original brief of counsel for appellant, in which it is stated, "People are inherently curious of other's marital difficulties; and it has been counsel's experience that the entering of a decree against a person lends nothing to his or her social or business position. Especially is this true if the party against whom it is rendered is a woman. It may affect seriously her chances of ever making a satisfactory and happy marriage in the future. Until recently at least, a decree such as that entered in the case at bar would certainly prevent the enlistment of a woman in the United States Army Nurse's Corps, and in possibly other branches of the service, as she must show, by a certified copy of the decree attached to her application, that she was the innocent party in any marital difficulties

resulting in divorce. Such a decree might seriously affect a person's property rights, his or her right to the custody of their children, and other matters which could easily arise. The statutes of this state on the subject of divorce leave no doubt that it is contemplated that the innocent party alone shall sue for and be awarded a decree of divorce. And it has long been the general rule that a good defense to a divorce action is a showing by the defendant that he or she is entitled to a divorce from the plaintiff even though plaintiff has likewise proved grounds for divorce against the defendant.

In *Ramacciotti v. Ramacciotti, 131 Cal. Ap. 191, 20 Pac. 2nd 961,* it appeared that plaintiff brought suit for and was awarded a divorce. She appealed from the decree on the ground that it was a nullity because it failed to show in whose favor it was entered. The Court said:

" 'Reading together the findings of fact and conclusions of law and the decree, the latter plainly provides that the interlocutory decree of divorce was rendered in favor of the plaintiff and against the defendant.'

"In *Oliver v. Oliver, 216 Iowa 57, 248 N. W. 233,* plaintiff and defendant both asked for divorce. Her petition was dismissed, and the case heard on cross petition, and a decree of divorce was entered. She appealed, one of her grounds being that the decree did not recite in whose favor the divorce was granted. The Court held:

" 'The divorce was granted upon the prayer of the party, shown by the testimony to be innocent, and is sustained by abundant testimony . . . Many times, *and it may be added the better practice, decrees recite that the divorce is granted to the successful party, . . . but a decree, dissolving the bonds of matrimony . . . , upon the petition of the innocent party and upon sufficient testimony,* . . . is not invalidated because of the omission of such matters.'

"The Ramaciotti case is distinguished from the case at bar, in that only one of the parties asked for a divorce, and further, the findings of fact and conclusions of law filed therein showed clearly that the divorce was awarded to her. And the *Oliver* case is distinguishable, in that, at the time testimony was taken, plaintiff's petition had been dis-

missed, and the case proceeded only on the cross-complaint for divorce. In the case at bar, testimony was taken on the pleadings of both parties, *both of whom prayed for a divorce.* (Italics ours.)

In *Anderson v. Anderson, 97 Wash. 202, 166 Pac. 60,* the court said:

" 'A decree of divorce stands upon no higher ground than a decree in any other suit or proceeding. The court so held in *Ruge v. Ruge, 165 Pac. 1063* saying:

" 'We must disabuse our minds of the thought that there is any peculiar mystery attaching to decrees of divorce and alimony merely because they are such. But if they and their incidents are to be treated differently from ordinary judgments and decrees, it must be so because of some scientifically and legally sound basis upon which they can be considered as exceptions to the general rules.'

"In *Ferrell v. Simmons, et al., 65 W. Va. 45, 59 S.E. 752, 129 Am. St. R. 962,* the court said:

" 'But worse yet, . . . the judgment does not show for or against whom it is. . . . Except for forced inference we cannot say for or against whom the judgment is.

" 'A judgment not designating in whose favor it is rendered is void for uncertainty. The judgment must designate with certainty the party against whom it is rendered.' *11 Ency. Pl. & Prac. 949, 951.*

"In *Ward v. Ward, 48 R. I. 60, 135 Atl. 241, l.c. 242,* the court said:

" 'The entry of a final decree on a decision granting a divorce is equivalent to the entry of a judgment.' "

For the errors herein pointed out it is the opinion of the writer that the decree appealed from should be reversed.

So ordered.

BUFORD, C. J., BROWN and CHAPMAN, JJ., concur.