76 So.2d 662 (1954)
Stanley H. COX and Mamie F. Cox, his wife, Appellants,
v.
Michael D. LA POTA and Adelaide R. La Pota, his wife, Appellees.
Supreme Court of Florida. Special Division A.
December 21, 1954.
Rehearing Denied January 10, 1955.
*663 W. Kenneth Barnes, Dade City, for appellants.
Dayton & Dayton, Dade City, for appellees.
MATHEWS, Justice.
This is an appeal from a decree for specific performance. The contract involved was dated June 11, 1953, and the suit was filed October 5, 1953.
The first error alleged by the appellants is that the property was owned by husband and wife and that although they admitted the execution of the contract it was not executed in the presence of two attesting witnesses. This fact was not made known to the appellees until the appellants filed their answer in this suit on the 5th day of December, 1953. It is true that Section 689.01, F.S., F.S.A., requires that the instrument be signed "in the presence of two subscribing witnesses by the party so assigning or surrendering, or by his agent thereunto lawfully authorized, or by the act and operation of law".
At the time the contract was signed the appellants knew of the law and that it provided for two witnesses. The husband made the statement to his broker, "There is nobody here to witness the contract but if you like we can go down the road to a neighbor of mine and he can witness it". The broker said, "This is all right. I have a couple of barbers down near the office that do this all the time for me". Thereupon three copies of the contract were delivered to the broker who had his daughter and mother-in-law sign as witnesses to the appellants' signatures. The contract was then mailed to the appellees for execution. When the three copies were received by the appellees in Chicago, each copy showed the signatures of the appellants and two witnesses to the appellants' signatures. They were then duly executed by the appellees and returned and one copy was delivered to the appellants which showed on its face that it had been signed by all parties and properly witnessed. The only parties who had any actual knowledge that the contract had not been properly witnessed were the appellants, their broker and the daughter and mother-in-law of the broker.
After numerous conferences minor defects in the title were cured to the satisfaction of the appellants and on August 11, 1953 a closing conference was held in the office of the appellant's attorney in Tampa. For reasons not raised on this appeal and not before the Court the transaction was not closed on the date in question by the parties but they agreed to meet the following Saturday to close the transaction. It was not closed on the following Saturday. In lieu of closing the transaction the appellants wrote a letter to the appellees stating that they considered the contract cancelled and setting out in the letter their reasons. None of the reasons in the letter are raised as grounds for this appeal and, therefore, are not before the Court. The first time the appellants raised the objection that the contract had not been executed in the presence of two witnesses was when they filed their answer to the bill of complaint on the 5th day of December, 1953.
It is the contention of the appellees that the appellants are estopped from questioning the validity of the contract because of their conduct in leading the appellees to perform the contract, to incur expenses as a result thereof and to materially change their position. In 19 Am.Jur., Estoppel, Section 148, page 800, the author states:
"* * * One who leads another to act upon a supposed contract and to incur expenses or otherwise change his position by reason thereof is estopped to refuse compliance with his own obligations thereunder upon a pretext of some defect in a matter of form. * * *" (Emphasis supplied.)
Appellants contend that the fact that the property was homestead property makes a material difference and that the doctrine of estoppel does not apply.
In the case of New York Life Insurance Co. v. Oates, 141 Fla. 164, 192 So. 637, 642, Oates v. New York Life Insurance Co., *664 314 U.S. 614, 62 S.Ct. 56, 86 L.Ed. 494, Mrs. Oates, at the request of her husband, signed a mortgage to the home. She then gave the mortgage to her husband who took it out of her presence and had two witnesses sign it and the notarial certificate executed. When the mortgage was delivered to the mortgagee it was regular and valid upon its face. In that case this Court said:
"* * * A married woman in proper cases may be estopped by her conduct concerning the execution of acknowledgment of instruments affecting real estate in which she is interested.
* * * * * *
"When the prescribed execution and acknowledgment, as shown by the instrument, appear to be regular and legal on their face, and there is nothing in or on the mortgage or conveyance or the record thereof to indicate a failure to comply with any of the formal requirements as to the execution, acknowledgment or record of such instruments, other parties may assume the legality of such execution and acknowledgment in the absence of notice or knowledge of any irregularity. * *
* * * * * *
"* * * The mortgagee had no cause to suspect or doubt the regularity and validity of the execution and acknowledgment of the mortgage. * *"
The signing before a Notary Public and the acknowledgment of an instrument, if anything, is more solemn than the mere signing of an instrument in the presence of two witnesses.
In the case of Cantrell v. Herring, 144 Fla. 576, 198 So. 206, this Court sustained a contract which the wife signed to convey real estate but did not sign her name in the presence of two witnesses. The contract, on its face, showed that two witnesses signed. In the case of Steen v. Scott, 144 Fla. 702, 198 So. 489, this Court again held that a married woman may be estopped by her conduct to deny the validity of a contract affecting real property. In that case it was alleged that the lease was invalid because the Notary had failed to certify that the wife acknowledged execution of the lease separate and apart from her husband, as required by statute.
In this case the record shows that the appellants attempted to lull the appellees to sleep by their conduct. They caused the appellees to change their position. It was peculiarly within the knowledge of the appellants that the contract had not been signed by them in the presence of two witnesses. It was within their knowledge that they delivered the contract to their own broker with the understanding that he have two witnesses subscribe their names before the contract was sent to the appellees. They should not be permitted to repudiate their contract or refuse to comply with it on the ground that it had not been signed by them in the presence of two witnesses. To permit the appellants to take advantage of such a defense under the facts disclosed by this record would permit them to plead their own wrong, which was known to them, as an excuse for non-compliance. The defense which they imposed was an affirmative defense and the record shows that they did not come into a court of equity with clean hands.
The second assignment of error is that no specific performance should be decreed because the description contained in the contract was defective. The description was as follows:
"All that parcel of land, with the buildings and improvements thereon, situate 30 miles North of Tampa, Florida, and 15 miles South of Brooksville, Florida, with approximately 2 1/2 miles of highway frontage on U.S. Highway No. 41, containing approximately 450 acres and commonly known as `C Bar C Ranch', together with all the interest or ownership of the parties of the second part in and to the furniture, furnishings, supplies, appliances, fixtures, equipment and other personal property now on said premises, which *665 is appurtenant to or used in the operation of said premises."
Prior to the execution of the contract, the broker took the appellees to see the "C Bar C Ranch" and the appellants and the broker conducted the appellees on a tour of the ranch. On the date the contract was delivered, the appellee, Michael D. LaPota, made another inspection of the ranch. The appellants furnished an abstract of title based upon the description contained in the contract and this abstract was examined by the attorneys for the appellees. The real test in such a case is that the description furnished must be sufficient in itself or furnish the means by which the land can be identified with reasonable certainity. See Lente v. Clarke, 22 Fla. 515, 1 So. 149, and Triplett v. Lucas, 94 Fla. 159, 113 So. 685.
In listing the property with the broker the appellants referred to it as "C Bar C Ranch" as disclosed by this record and the property was known to be located 30 miles from Tampa and 15 miles from Brooksville on U.S. Highway No. 41. The description itself showed that it contained approximately 450 acres with two and one-half miles of frontage on U.S. Highway No. 41, and that the property was owned by the appellants. It was known in the community as the "C Bar C Ranch" and had signs on the property identifying it as such.
In the case of Hammond v. Hacker, 93 Fla. 194, 111 So. 511, this Court said:
"* * * Where the description shows that a particular tract, as distinguished from other lands, is meant, then parol evidence can be resorted to to apply the description, or identify, or locate the land, though the description be somewhat general. However precise the description, a resort to parol evidence for such purpose is always necessary to apply it or ascertain the land described. This is not adding anything to the terms of the agreement or memorandum, and consequently not a violation of the statute. Lente v. Clarke, Adm'x, 22 Fla. 515, text 520, 1 So. 149."
The description set forth in the contract was sufficiently specific and there is no merit in this assignment of error.
We have examined the record, the briefs and listened to the oral argument with reference to all other assignments of error and they are without merit. It is unnecessary to discuss them.
Affirmed.
ROBERTS, C.J., and SEBRING and DREW, JJ., concur.