335 So.2d 810 (1976)
Estelle Jones WILLIAMS, Formerly Estelle Jones Foerster, Appellant,
v.
David Wendell FOERSTER, Appellee.
No. 45949.
Supreme Court of Florida.
July 21, 1976.
*811 William H. Maness, Jacksonville, for appellant.
William L. Durden of Kent, Sears, Durden & Kent, Jacksonville, for appellee.
OVERTON, Chief Justice.
This is an appeal from a decision of the First District Court of Appeal reported at 300 So.2d 33 (Fla.App. 1st 1974), which declared part of Section 689.11(1), (2), Florida Statutes (1975), unconstitutional. We have jurisdiction.[1]
The parties were husband and wife and the real property inter-spousal conveyance issue in this cause results from their domestic relations dispute. The property was the home of the parties and was held as a tenancy by the entirety. In 1965 during a marital dispute the appellee husband executed a deed conveying the home property to the appellant wife. The deed was witnessed by one person. The wife neither joined in the conveyance nor recorded the deed, placing it instead in the hands of a priest.
The appellant wife contends that the deed executed by the appellee husband in her favor did, as a matter of law, operate to convey to her the family residence. The appellee husband asserts that the deed was made prior to an initial separation of the parties for a one-year period, after which they were reconciled and lived together in the home for approximately one year. He *812 testified that he had assumed the deed had been destroyed and that he gave it to his wife solely to appease her during the earlier period of marital unrest.
The trial court held that the deed executed by the husband purporting to convey to the wife the family home was ineffective.
The wife appealed to the First District Court of Appeal contending the deed was valid even if she did not join her husband in its execution by the operation of Section 689.11(1), (2), Florida Statutes. The District Court held this act unconstitutional, stating as follows:
"While the 1971 Act does do away with the necessity of joinder of the other spouse where a homestead is involved, that legislative enactment is not worth the proverbial plugged nickel in light of Article X, Section 4(c) of the Florida Constitution of 1968, F.S.A., as amended in 1972, as contended by appellee. That constitutional provision reads in material part:
"`(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse...'
"The provisions of Article X, Section 4 of the 1885 Constitution, which were in effect at the time the deed in question was executed likewise required joinder of both spouses for the alienation of a homestead." 300 So.2d at 35.
We agree with the finding of the trial judge, but disagree with the constitutional holding of the District Court. There is a distinction between inter-spousal alienability of solely owned homestead property and inter-spousal alienability of an estate by the entireties occupied as the home of the parties. This distinction was clearly established by Mr. Justice Sebring in Denham v. Sexton, 48 So.2d 416, 418 (Fla. 1950), where he said the following:
"... [T]he title to the property was held as an estate by the entireties. As respects property so held, it becomes upon the death of one spouse the sole property of the remaining spouse to the exclusion of the heirs of the decedent, even though occupied during the lifetime of both parties as a homestead. See Menendez v. Rodriguez, 106 Fla. 214, 143 So. 223; Knapp v. Fredericksen, 148 Fla. 311, 4 So.2d 251. The homestead provisions of the Constitution adopted for the benefit of heirs of the head of a family to take effect upon his demise do not apply to such property and it may be disposed of by tenants by the entireties as may any other property not exclusively owned by the head of a family and occupied by him as a homestead... ."
The provisions of Article X, Section 4, of the 1885 Constitution, which Justice Sebring was construing, were in effect at the time the deed was made in the instant case. The same basic requirements are in our present constitutional provision. All the cases cited in the District Court opinion concern homestead property owned solely by the head of the household.
We agree with the appellant that the District Court erred in holding Section 689.11, Florida Statutes, unconstitutional. The record, however, does support the finding of the trial judge that the deed was ineffectual, it being uncontroverted that the deed was signed by only one witness in contravention of Section 689.01, Florida Statutes (1975), together with evidence that the husband had no actual intention to effectively convey the property to his wife. The decision of the trial judge, who heard and evaluated the testimony in evidence in this cause and entered an extensive order concerning the property interests of the parties, is supported by the record.
The decision of the First District Court of Appeal, affirming the trial court, is approved, but its opinion holding Section 689.11(1), (2), Florida Statutes (1975), unconstitutional, is vacated.
It is so ordered.
*813 BOYD, ENGLAND and DREW (Retired), JJ., concur.
ROBERTS, J., concurs in part and dissents in part with an opinion.
ADKINS, J., and MASON, Circuit Court Judge, dissent and concur with ROBERTS, J.
ROBERTS, Justice (dissenting in part, concurring in part).
On May 28, 1965, appellee gave to his wife a deed whereby he purported to deed to the wife all right, title and interest in and to the homestead of the parties which was held as a tenancy by the entirety. The evidence clearly shows that the husband deeded the tenancy by the entirety owned by him and his wife to his wife to induce her to stay with him during a time when their domestic relationship was turbulent. Appellee, an attorney, aware of the requirements for conveyance of realty, expressly testified that he deeded the property to his wife to appease her and that he purposely did not put the second signature on the deed. Respondent was Chairman of the Eminent Domain Committee of The Florida Bar.
Relative to the circumstances surrounding the conveyance, appellant testified that her husband had given her the deed spontaneously to make her feel secure and to convince her that he was genuinely sorry that he could not control himself when he came home and physically roughed her up. Appellee never told appellant that the deed was defective although he admits purposely controlling the execution in such a manner as to cause the deed to be defective. In response to appellant's inquiry of him as to whether the deed should be recorded, he answered negatively telling her that only people not honest in business would do that.
In light of appellee's apparent misconduct in giving appellant a defective deed, I would find that he is now estopped from contesting the validity of the contract affecting the real property in question.
This Court in Cox v. LaPota, 76 So.2d 662 (Fla. 1955), stated:
"In this case the record shows that the appellants attempted to lull the appellees to sleep by their conduct. They caused the appellees to change their position. It was peculiarly within the knowledge of the appellants that the contract had not been signed by them in the presence of two witnesses... . They should not be permitted to repudiate their contract or refuse to comply with it on the ground that it had not been signed by them in the presence of two witnesses. To permit the appellants to take advantage of such a defense under the facts disclosed by this record would permit them to plead their own wrong, which was known to them, as an excuse for non-compliance. The defense which they imposed was an affirmative defense and the record shows that they did not come into a court of equity with clean hands."
Pursuant to the principle of estoppel, I must agree with appellant's position that where taking advantage of superior legal knowledge (appellee's area of expertise was real property) and a confidential relationship, an attorney-husband gives his wife a deed which, unbeknownst to her, is purposely and designedly not in compliance with statutory requisites for conveyance of realty  want of an attesting witness  to deceive her and pretend atonement for many physical abuses, the contract of conveyance of the subject realty will be enforced.
Emphatically, I reiterate that which I previously elucidated in my dissent to Ryan v. Ryan, 277 So.2d 266 (Fla. 1973), relative to the principle of "unclean hands," and which may most appropriately be applied sub judice:
"One of the most elementary and fundamental concepts of equity jurisprudence and a universal rule which affects the entire system of equity jurisprudence is the maxim that `He who comes into equity must come with clean hands.' This principle is founded upon conscience and good faith.
"`Whatever may be the strictly accurate theory concerning the nature of *814 equitable interference, the principle was established from the earliest days, that while the court of chancery could interpose and compel a defendant to comply with the dictates of conscience and good faith with regard to matters outside of the strict rules of the law, or even in contradiction to those rules, while it could act upon the conscience of a defendant and force him to do right and justice, it would never thus interfere on behalf of a plaintiff whose own conduct in connection with the same matter or transaction had been unconscientious or unjust, or marked by a want of good faith, or had violated any of the principles of equity and righteous dealing which it is the purpose of the jurisdiction to sustain. While a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies.' 2 Pomeroy, Equity Jurisprudence, 5th Edition, § 398, p. 93.
"If one who seeks to set the judicial machinery in motion has violated conscience or good faith, the doors of the court of equity will be shut against the actor. By employing the doctrine of unclean hands the courts of chancery will refuse to acknowledge his right or to award him any remedy. A litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair or unconscientious in respect to the matter concerning which he seeks relief. National Fire Insurance Co. v. Thompson, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881 (1930); Keystone Co. v. Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); Nedd v. Starry, 143 So.2d 522 (Fla.App. 1962); Gables Racing Association v. Persky, 148 Fla. 627, 6 So.2d 257 (1940). In the very early decision of Bein v. Heath, 6 How. 228, 247, 12 L.Ed. 416, the Supreme Court of the United States opined,
"`It is a principle in chancery that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of inequity.'
"Subsequently, in Deweese v. Reinhard, 165 U.S. 386, 390, 17 S.Ct. 340, 341, 41 L.Ed. 757, the Supreme Court of the United States stated:
"`A court of equity acts only when and as conscience commands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity.'
"The maxim of unclean hands has continuously been held to be applicable to divorce suits. Previous to the enactment of Florida's new dissolution law, it was held that a court of equity would not grant a divorce to a spouse who is responsible for the wrongs and injuries complained of, that is one who comes into equity with unclean hands. Sahler v. Sahler, 154 Fla. 206, 17 So.2d 105 (1944); Gordon v. Gordon, 59 So.2d 40 (Fla. 1952) cert. den., 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680; Hudson v. Hudson, 59 Fla. 529, 51 So. 857 (1910); Busch v. Busch, 68 So.2d 350 (Fla. 1953); Stewart v. Stewart, 158 Fla. 326, 29 So.2d 247 (1947); Stehli v. Thompson, 151 Fla. 566, 10 So.2d 123 (1942); Devlin v. Devlin, 157 Fla. 17, 24 So.2d 704 (1946); Furman v. Furman, 130 So.2d 316 (Fla.App. 1961); Choucherie v. Choucherie, 120 So.2d 821 (Fla.App. 1960)."
Appellee effectually admits that he executed the deed in a knowingly defective manner as a trick to deceive his wife.
*815 The Second District Court of Appeal in Medina v. Orange County, 147 So.2d 556 (Fla.App.2, 1962), explicated:
"When viewed in such posture, the Medinas' technical assault upon their conveyance, grounded solely upon the fact that but one of four witnesses subscribed their deed prior to delivery, is fruit out of season in a garden of equity. Equity regards as done that which ought to have been done and will sustain such a deed, even though subscribed by only one of several witnesses prior to delivery." (emphasis supplied)
Cf. Alexander, et al. v. Colston, 66 So.2d 673 (Fla. 1953).
Appellee is estopped from contesting the validity of the deed on the basis that it did not comply with Section 689.01, Florida Statutes.
I do, however, concur with the majority that this property as tenancy by entirety could properly be conveyed by husband to wife without the wife's joining in execution.
Accordingly, I dissent and would enforce the contract of conveyance.
ADKINS, J., and MASON, Circuit Court Judge, concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.