944 So.2d 1036 (2006)
Clifford G. MARLOWE, as Executor of the Estate of Catherine W. Brown, Appellant,
v.
Richard E. BROWN, Sr., and Huntington National Bank, N.A., Appellees.
Nos. 4D03-3076, 4D04-2071.
District Court of Appeal of Florida, Fourth District.
August 2, 2006.
Rehearing Denied September 22, 2006.
*1037 Stephen Rakusin of The Rakusin Law Firm, A Professional Association, Fort Lauderdale, for appellant, and Russell J. Ferraro, Jr. of Ferraro & Ferraro, P.A., Stuart, withdrawn as counsel after filing brief.
James L.S. Bowdish and Jennifer L. Williamson of Crary, Buchanan, Bowdish, Bovie, Beres, Elder & Thomas Chartered, Stuart, for appellee Richard E. Brown, Sr.
Steven L. Perry of McCarthy, Summers, Bobko, Wood, Sawyer & Perry, P.A., Stuart, for appellee Huntington National Bank, N.A.
GROSS, J.
This consolidated appeal arises from divorce and probate cases involving Catherine Brown and Neuberne Brown, Jr. Neuberne died before the entry of a final judgment of dissolution of marriage. We hold that a "mediation settlement agreement" entered into at the beginning of the divorce case does not control the distribution of property after the husband's death.
After a 25-year marriage, the wife filed for divorce on August 21, 2001. The parties came to a "mediation agreement for temporary relief" on September 1, 2001. At the request of the parties, the trial court approved the mediation agreement. Among the provisions of the agreement *1038 was paragraph 11, addressing equitable distribution:
Once the parties reach an agreement as to what their [marital] assets are and their liabilities, they shall divide the assets and liabilities 50/50, excluding the wife's furs and personal jewelry, and the husbands guns and jewelry. Husband represents that the only liability of the parties that he knows of is the mortgage on the Naked Lady Ranch property.
The mediation agreement did not specify what would happen if one of the parties died during the pendency of the divorce action.
The husband counterpetitioned for dissolution, which the wife perceived as an attempt to disavow paragraph 11. The counterpetition sought unequal distribution of the parties' assets and partition of the Naked Lady Ranch, but not of other real property. During the dissolution proceeding, the court neither distributed the real estate nor ordered partition of any property.
In March, 2002, the wife moved to enforce the mediation agreement; the trial court ruled that the mediation agreement was "valid and enforceable until and unless it is set aside." The court found that by the agreement the parties "agreed that the distribution of marital assets shall be 50/50," that neither party "shall claim special equity or disparate distribution of marital assets at trial," and that the "equitable distribution issue remaining for trial is whether an item is marital or not."
The husband moved to set aside the mediation agreement, contending that the agreement was procured by mediator misconduct and that paragraph 11 was merely an unenforceable "agreement to agree." The trial court denied the husband's motion in September, 2002.
On September 25 and 26, 2002, the trial court held an evidentiary hearing to determine the marital and non-marital assets of the parties.
After the September hearing, on November 26, 2002, the wife moved the court to equally distribute 22 investment accounts that the parties agreed were marital accounts.
On January 21, 2003, the court entered an "Order Regarding Evidentiary Hearing Held on September 25, 2003 and September 26, 2002." The order specifically identified the non-marital assets of both the husband and wife. The order listed the parties' extensive marital assets, which included bank accounts, investment accounts, coins, automobiles, personal property, a business, farm assets, and real estate. For five parcels of real estate  Greenbrier Farm, Naked Lady Ranch, three Hatteras Lots in North Carolina, and a lot in New Jerseythe court rejected the husband's claim that the real estate was his non-marital property. The order did not place a value on any asset; it provided that the marital assets "shall be split fifty-fifty (50/50) as part of the Court's equitable distribution." The order allowed some accounts to be split immediately "if there [was] no question that they be split fifty-fifty." The court retained jurisdiction to "enter such [other orders] that are necessary given the effect of this Order."
Also on January 21, 2003, by a separate order, the court granted the wife's November 26 motion to distribute joint accounts, and ordered that 22 accounts "be immediately divided 50-50."
On June 30, 2003, the husband died. There had been no final judgment of dissolution, no valuation of the properties, and no plan of equitable distribution.
*1039 On July 1, 2003, Richard Brown, the husband's brother and tentative personal representative of his estate, filed an emergency motion in the divorce proceeding seeking to restrain the wife from disposing of marital property. Richard Brown argued that the divorce had been acrimonious and that he desired to make a proper inventory of the property of his brother's estate.
The wife responded to the personal representative's emergency motion the same day it was filed. She argued that, given the husband's death and the absence of a final judgment, the case should be dismissed. On July 3, the husband's brother moved to intervene in the divorce proceeding.
On July 21, 2003, the court ruled on the motions filed by the wife and the husband's brother in the dissolution action. The order restrained the wife from removing anything from the Naked Lady Ranch and Greenbrier Farm, ordered "everything to remain status quo for 30 days" to allow for a personal representative to be appointed, and ordered the wife to release the husband's address book to his brother. The wife appealed this order.
The husband's brother commenced a probate proceeding by filing a petition for administration. In August, 2003, the wife submitted an answer and affirmative defenses to the petition for administration.
In September, 2003, the wife moved the probate court to declare certain assets to be hers. Among these assets were the Greenbrier Farm, the Naked Lady Ranch, and "Hatteras Lots;" the dissolution judge's January 21 order had found that the husband and wife owned these properties as tenants by the entirety. The wife argued that these lots passed to her by operation of law when her husband died. The wife made similar arguments as to other properties based on the way the properties were titled at the time of the husband's death. For example, the wife argued that 103,114.299 troy ounces of silver passed to her under the provisions of a storage contract which declared that the account was a joint tenancy with right of survivorship.
On May 19, 2004, the probate court denied the wife's motions. The court held, inter alia, that (1) the September 1, 2001 mediation agreement was binding upon the "Widow and the Deceased (or his estate and trust);" (2) the September 1, 2001 mediation agreement "is not nullified by the death of [the husband], but in fact survives the Deceased's death," and (3) all assets of the parties, whether held "individually . . . or Jointly" were "all marital assets to be divided fifty-fifty."
The wife appealed this order.[1]
The wife died on April 1, 2005. Clifford Marlowe, the executor of her estate, has been substituted as a party. The husband's brother, Richard Brown, Jr., is a party in his capacity as trustee of the husband's Revocable Living Trust dated July 25, 2001. The Huntington National Bank opposed the wife's motions in probate in its capacity as the curator of the estate of the husband.
The dissolution of marriage action terminated with the death of the husband and the dissolution judge should have dismissed the case upon the wife's motion. See Sahler v. Sahler, 154 Fla. 206, 17 So.2d 105, 106-07 (1944); Messana v. Messana, *1040 421 So.2d 48 (Fla. 4th DCA 1982); MacLeod v. Hoff, 654 So.2d 1250, 1251 (Fla. 2d DCA 1995); Simpson v. Simpson, 473 So.2d 299 (Fla. 3d DCA 1985); Jaris v. Tucker, 414 So.2d 1164 (Fla. 3d DCA 1982). Because the husband died before the entry of a final judgment of dissolution, this case is unlike those which hold that after the entry of a final judgment, a trial court retains jurisdiction to determine property rights after a spouse's death, if it reserved jurisdiction to do so in the judgment. See Fernandez v. Fernandez, 648 So.2d 712 (Fla.1995); Becker v. King, 307 So.2d 855, 858-59 (Fla. 4th DCA 1975). This case is also unlike Gaines v. Sayne, 764 So.2d 578 (Fla.2000), where a spouse died after a final judgment but before the hearing on a motion for rehearing; the supreme court held that the death did not void the final judgment, where the issues raised on rehearing related to property and other matters "collateral to the adjudication of dissolution." Id. at 586.
In Price v. Price, 114 Fla. 233, 153 So. 904, 905 (1934), the supreme court described the effect of an appellate reversal of a divorce decree, where one spouse dies after the issuance of the decree, but while the appeal is pending:
[O]n such reversal, the parties will be placed in the position they occupied before the decree was entered, and if one of them has died between the date of the decree of divorce and its reversal, the survivor procuring the reversal will be entitled to all rights of succession or the like, in the estate of the other, the same as if no divorce has ever been had.
Similarly, the husband's death in this case left the wife in the legal position of one whose marriage was terminated by death, and not by a final judgment. Interlocutory orders in a divorce proceeding generally do not survive the dismissal of a lawsuit when a spouse dies before the entry of a final judgment. See Jaris, 414 So.2d at 1166.
Both paragraph 11 of the settlement agreement and the January 21, 2003 order are similar to the oral order of the court in Sahler, which indicated that property "be divided in certain proportions" but did not "make any division of the property." 17 So.2d at 106. The supreme court observed that such vague pronouncements would not have amounted to a final decree even had they been reduced to writing. Id.
The husband's estate contends that the September 1, 2001 mediation agreement, as enforced in the January 21, 2003 order, survives the death of the husband to control the distribution of property after his death. We disagree, because the mediation agreement was too tentative and preliminary to control the disposition of property after the death of the husband.
The husband's estate relies primarily on Snow v. Mathews, 190 So.2d 50 (Fla. 4th DCA 1966),[2] but that case involves a more definite and complete agreement than the one here at issue. In Snow, a husband and wife entered into a separation agreement which provided, among other things, "that their home which was held in an estate by entirety would be sold and the net amount received therefrom divided equally." Id. at 51. Executed in accordance with statutory provisions providing for the conveyance of title to property, the agreement specifically described the property and provided that each party would execute the "necessary papers, documents, *1041 deeds and transfers" to accomplish the division of the asset. Id. at 51-52. About a month after the execution of the agreement, the husband died. The executrix of the husband's estate signed a contract to sell the real estate. A $2,500 binder was divided between the husband's executrix and the wife. Id. at 52. A short while later, the wife died, and her executrix refused to go through with the closing, contending that title to the property had vested in the wife upon the death of the husband. Id.
The purchasers in Snow sued both executrices for specific performance. The trial court ruled that the wife's estate was entitled to all of the proceeds of the sale. Id. We reversed, reasoning that the "separation agreement between the parties discloses that the agreement was clearly intended to be a complete and final distribution of the jointly owned property of the parties including specifically the home place;" as a result, the "contract effectively terminated the estate by entirety" as of the date of its execution, so that the husband and wife became tenants in common "entitled to an equal division of the proceeds of the sale of the property." Id.
The September 1, 2001 mediation agreement in this case was not the "complete and final" distribution that we confronted in Snow. The husband opposed the wife's interpretation of the agreement throughout the divorce proceeding. At most, on September 1, the parties agreed that distribution of marital assets and liabilities would be equal, the beginning premise of all equitable distribution. See § 61.075(1), Fla. Stat. (2004). Paragraph 11 of the settlement agreement identifies no assets. It provides only that the parties will equally divide those assets which they agree are marital. Paragraph 11 does not address what happens to assets which the parties do not agree to be marital. Neither the settlement agreement nor the court's January 21, 2003 order sets forth a plan of equitable distribution of assets and liabilities. Neither the agreement nor the order specifies whether the disputed parcels of real property are to be partitioned and sold or whether each party would receive complete title to parcels of equal value. The January 21 order did not value the assets or determine entitlement to them; it contemplates further discovery regarding certain assets and the ultimate entry of an order of equitable distribution. Like the September 1, 2001 mediation agreement, the January 21 order was interlocutory only, a step in the direction of a final solution, the final judgment that was never entered. See Greenwald v. Blume, 312 So.2d 783 (Fla. 3d DCA 1975). For these reasons, neither the settlement agreement nor the January 21 order survives the death of the husband to control the disposition of property.
We reverse the July 21, 2003 order in the dissolution action and remand to the circuit court with directions that the dissolution action be dismissed. We reverse the May 19, 2004 order of the probate court and remand for further proceedings consistent with this opinion.
WARNER and KLEIN, JJ., concur.
NOTES
[1] The wife does not challenge the trial court's entry of the January 21, 2003 order granting her motion and equally distributing 22 accounts. We therefore do not discuss the application of the doctrine of judicial estoppel. See Grau v. Provident Life & Acc. Ins. Co., 899 So.2d 396 (Fla. 4th DCA 2005).
[2] The husband's estate also cites to Kaylor v. Kaylor, 466 So.2d 1253 (Fla. 2d DCA 1985), which holds that in a divorce case, a partial final judgment concerning the parties' property rights is not void when entered before a final judgment dissolving the marriage. This case does not involve such a final judgment resolving all of the parties' property issues.