STEVENSON, C.J.
Appellant, Lewis Tunnage, executed two quitclaim deeds that purported to convey his interests in three lots to appellee, Clifford Green. Only the notary signed those deeds as a subscribing witness. Thereafter, according to Green, Tunnage, or someone on his behalf, allegedly forged Green’s signatures on deeds reconveying the lots back to Tunnage. Green subsequently filed a complaint that alleged fraud concerning the execution of the first set of deeds, sought to quiet title to the property, and requested reasonable attorney’s fees. Green prevailed at the jury trial and Tun-nage now appeals. Because the initial set of deeds were defective on their face and failed to convey legal title to Green, we reverse the quiet title judgment. Further, we reverse the award of section 57.105 attorney’s fees to Green. We affirm the jury verdict and consequent judgment for fraud, even though the jury awarded no damages.
According to the complaint, Tunnage and Green engaged in a joint venture in which Green agreed to manage and repair certain property owned by Tunnage in exchange for a share of the rental income. Green alleged that, at some point, instead of paying Green a share of the net income for his repair and maintenance work, Tun-nage agreed to give him lots 23 through 25 and signed quitclaim deeds to that effect. The only witness to sign the deeds was the notary, Sandra Stokes. A few months later, while maintaining the property and paying the assessed taxes, Green discovered that Tunnage recorded two quitclaim deeds that conveyed the property back to himself. Based on those facts, Green sued Tunnage to quiet title, claiming ownership of the lots, and for fraud, contending that Tunnage maliciously gave him the initial deeds even though Tunnage knew the *688 deeds lacked the required number of signatures.[1] Tunnage maintained that he only gave Green the quitclaim deeds to facilitate Green’s management of the property in dealing with tenants, the police, code enforcement authorities, and the like. Tunnage testified that since he never intended to give Green the lots, only the notary signed the deeds as a witness. After deliberations, the jury returned a verdict that quieted title in Green, found that Tunnage committed fraud, and determined that Green suffered no damages.
We first address Tunnage’s argument that the trial court erred by denying his pre-trial motion for summary judgment. Tunnage asserted in this motion for summary judgment that the deeds he gave Green could not convey title because they were not signed by two subscribing witnesses as required by Florida law. Florida Statutes section 689.01 (2005), provides that a deed transferring an interest in real property must be signed in the presence of two subscribing witnesses. Green admits that this requirement was not complied with, but asserts that equitable estoppel prevents Tunnage from challenging the deeds’ validity.
Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them....
19 Am.Jur., Estoppel § 34, at 634.
In the instant case, Green purports to use the doctrine of equitable es-toppel to perfect his interest in the property. The Florida Supreme Court has stated that “[i]t is well settled that the principles of estoppel may be applied in defense of a title, but not to establish one.” City of Naples v. Morris, 71 So.2d 905, 905 (Fla.1954). “ ‘The purpose of the rule that title may not be created by estoppel is to prevent the uncertainty of titles which would arise if ... parol evidence of an estoppel could be introduced to show that the paper title is not what it appears to be.’ ” Kerivan v. Fogal, 156 Fla. 92, 22 So.2d 584, 586 (1945) (quoting Stone v. Culver, 286 Mich. 263, 282 N.W. 142, 143 (1938)). Conversely, “[wjhen a person has so acted as to make it appear from the face of a deed that a certain title has been created, he may be estopped to introduce parol evidence to show that that is not the actual title.” Stone, 282 N.W. at 143.
In Cox v. La Pota, 76 So.2d 662, 664 (Fla.1954), our supreme court held that where the vendors, who were husband and wife, allowed their broker to have a contract for the sale of a ranch improperly witnessed, they were estopped from repudiating the conveyance on the ground that the contract had not been signed by them in the presence of two witnesses.
At the time the contract was signed the appellants knew of the law that it provided for two witnesses. The husband made the statement to his broker, “There is nobody here to witness the contract but if you like we can go down the road to a neighbor of mine and he *689 can witness it.” The broker said, “This is all right. I have a couple of barbers down near the office that do this all the time for me.” Thereupon three copies of the contract were delivered to the broker who had his daughter and mother-in-law sign as witnesses to the appellants’ signatures. The contract was then mailed to the appellees for execution. When the three copies were received by the appellees in Chicago, each copy showed the signatures of the appellants and two witnesses to the appellants’ signatures.
Id. at 663. In the vendees’ suit for specific performance, the court reasoned that the vendors were estopped to raise the deficiency in the contract since they had caused it. Id. In Cox, the doctrine of estoppel came into play in defense of the vendees’ title, where, unlike the instant case, the contract was regular on its face as it had the appropriate number of witnesses.
Williams v. Foerster, 335 So.2d 810 (Fla.1976), is also instructive. In Williams, the husband, who was an attorney and familiar with the legal requirements for conveying real estate, deliberately gave his wife a deed that purported to convey to her the marital home. Despite the husband’s alleged superior knowledge of the law, the court held that the deed was ineffective in part because the undisputed evidence showed that the deed contained the signature of only one subscribing witness. See id. at 812. The majority rejected the exhortations in Justice Roberts’ dissent that the husband was “estopped from contesting the validity of the deed” for want of an attesting witness since “he executed the deed in a knowingly defective manner as a trick to deceive his wife.” Id. at 814, 815.
In view of the foregoing authorities, we conclude that, under Florida law, equitable estoppel is not available to create an interest in real property when a deed on which the proponent relies is substantially defective on its face. Accordingly, the trial court erred by denying Tunnage’s motion for summary judgment. Our reversal of this issue moots Tunnage’s arguments regarding his motion for a directed verdict on the quiet title claim, the denial of his requested jury instruction, and the injunction prohibiting him from claiming any interest in the lots.
We next turn to Tunnage’s claim that the trial court erred in finding Green was entitled to an award of attorney’s fees. Although the order fails to provide a statutory basis for the award, Green asserts his entitlement is justified based on Florida Statutes section 57.105. Before awarding fees pursuant to this section, the trial court must find that the losing party or its attorney “knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts.” § 57.105(l)(a)-(b), Fla. Stat. Whereas the order appealed includes none of the findings required by section 57.105, we also reverse the portion of the order awarding Green attorney’s fees. See Goldberg v. Watts, 864 So.2d 59 (Fla. 2d DCA 2003) (reversing an award of attorney’s fees because the trial court failed to make the required findings).
As his final point on appeal, Tun-nage argues that the jury returned an inconsistent verdict in finding that he committed fraud, but Green sustained no damages. “This court has consistently held that a party’s failure to object or otherwise inform the court of an inconsistent verdict before the jury is dismissed waives the inconsistency in the verdict as a point on *690 appeal.” Fla. Dep’t of Transp. v. Stewart, 844 So.2d 773, 774 (Fla. 4th DCA 2003). By waiting until after the trial judge dismissed the jury to argue that the verdict was inconsistent, Tunnage waived this issue for appellate review.

Affirmed in part and Reversed in part.

WARNER and TAYLOR, JJ., concur.

. The complaint also named Sandra Stokes and Holly Barnes in connection with the fraud count. Stokes was the notary on both the initial deeds and the reconveyance deeds; Barnes was the subscribing witness on the reconveyance deeds. Barnes and Stokes have not participated in this appeal.