T.C. Summary Opinion 2009-60

UNITED STATES TAX COURT

ULMER CLELAND, III AND LINDA E. CLELAND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22736-07S.                    Filed April 30, 2009.

Ulmer Cleland, III and Linda E. Cleland, pro sese.

<u>Roger W. Bracken</u>, for respondent.

NIMS, <u>Judge</u>:  This case was heard pursuant to the provisions
of section 7463 of the Internal Revenue Code in effect when the
petition was filed.  Pursuant to section 7463(b), the decision to
be entered is not reviewable by any other court, and this opinion
shall not be treated as precedent for any other case.  Unless
otherwise indicated, all section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $21,153 deficiency in petitioners' Federal income tax for the 2005 tax year. The issue for decision is whether petitioners may deduct as alimony payments made by Mr. Cleland to his former spouse.

## Background

Petitioners resided in Virginia when their petition was filed. Some of the facts have been stipulated and are so found.

On March 6, 2003, Mr. Cleland's former spouse, Jennifer Fisher, filed a petition for dissolution of their marriage. On August 13, 2003, the Circuit Court of the Eighteenth Judicial Circuit, in and for Brevard County, Florida (circuit court), entered an order for temporary emergency relief which directed Mr. Cleland to pay Ms. Fisher temporary support of $1,150 per month beginning August 1, 2003.

On October 21, 2004, Mr. Cleland and Ms. Fisher reached a settlement agreement which called for $35,092.93 in net lump-sum alimony to be paid to Ms. Fisher before entry of the circuit court's final judgment. The settlement terms were reviewed at a nonjury trial, and a proposed stipulated final judgment was filed with the circuit court. Mr. Cleland testified that he was ordered to make payments pursuant to the settlement agreement but could not provide documentary proof of that order.

Mr. Cleland did not immediately pay the net lump-sum alimony, and Ms. Fisher filed a motion for contempt and enforcement on November 24, 2004. On January 17, 2005, petitioner agreed to pay the net-lump sum alimony by January 31, 2005, and the hearing on Ms. Fisher's motion was canceled.

The circuit court entered its final judgment on April 6, 2005. The final judgment noted that Mr. Cleland had already paid the $35,092.93 net lump-sum alimony by certified check. The final judgment explained this figure as a $75,000 total lump-sum alimony with the following adjustments: (1) A $13,257.40 reduction for a distribution to Ms. Fisher of Mr. Cleland's share of the proceeds from the sale of their marital residence (house proceeds); (2) a $1,375 addition as a personal property distribution to Ms. Fisher; (3) a $1,100 addition for Ms. Fisher's payment of Mr. Cleland's debt; (4) a $125.33 reduction for Mr. Cleland's payment of joint debts; (5) a $6,000 reduction for Mr. Cleland's assumption of Ms. Fisher's debt; and (6) a $23,000 reduction for the transfer of Mr. Cleland's Janus account to Ms. Fisher (Janus transfer). The final judgment contained no provision concerning Mr. Cleland's liability for alimony after Ms. Fisher's death.

Except for Ms. Fisher's $6,000 debt and the $23,000 Janus transfer, the final judgment indicated that these payments had already been made but did not specify the exact date of the

payments. Though the final judgment at one point erroneously stated that the Janus transfer had already been made, the record (including the rest of the final judgment) indicates the payment was to be made within 30 days of entry of the final judgment. Mr. Cleland does not know when he paid Ms. Fisher's $6,000 debt.

Mr. Cleland testified that he did not make temporary support payments for the first 4 months of 2005. The final judgment declared that the house proceeds satisfied a $4,600 temporary support arrearage but did not state when the arrearage accrued or when the sale of the marital residence occurred.

On or about April 15, 2006, petitioners filed their return for the 2005 tax year. Petitioners claimed an alimony deduction of $79,600 arising from Mr. Cleland's payment of the $4,600 temporary support arrearage and the $75,000 total lump-sum alimony. On July 2, 2007, respondent mailed a statutory notice of deficiency to petitioners. Petitioners filed a petition with this Court on October 3, 2007.

On brief, petitioners now claim an alimony deduction of only $75,950.33. Petitioners do not have receipts for any payments made but contend that the $4,600 temporary support arrearage, the $13,257.40 house proceeds, the $35,092.93 net lump-sum alimony, and the $23,000 Janus transfer payments were made in 2005.

## Discussion

### I. Evidentiary Matters

As a preliminary matter, we must decide whether documents submitted by petitioners during trial should be admitted into evidence.

At trial petitioners sought to introduce letters between Mr. Cleland's and Ms. Fisher's attorneys (Exhibits 5-P and 6-P), a notice and motion for contempt and enforcement filed by Ms. Fisher (Exhibit 7-P), and a letter and notice of cancellation of the hearing on the motion for contempt (Exhibit 8-P). Petitioners offered these documents as evidence that Mr. Cleland made the disputed payments in 2005. Respondent objected to the admission of the documents on the grounds of hearsay. Respondent also objected specifically to Exhibits 7-P and 8-P for lack of foundation. We overruled the objections.

In their opening briefs respondent made no objection to the documents' admissibility but petitioners argued that the business records exception to hearsay applied. See Fed. R. Evid. 803(6). In his reply brief, respondent then raised the same objections brought at trial.

The Court generally conducts trials according to the rules of evidence for trials without a jury in the U.S. District Court for the District of Columbia and thus follows the Federal Rules of Evidence. Sec. 7453; Rule 143(a); Clough v. Commissioner, 119

T.C. 183, 188 (2002). However, the Court conducts small tax cases as informally as possible and may admit any evidence deemed to have probative value. Sec. 7463; Rule 174(b); <u>Schwartz v. Commissioner</u>, 128 T.C. 6, 7 (2007).

Since the documents are probative as to when the disputed payments were made, sufficient grounds exist under Rule 174(b) to overrule respondent's objections.

II. <u>Alimony Deduction</u>

Alimony payments are generally taxable to the recipient and deductible by the payor. Secs. 61(a)(8), 71, 215. Whether a payment constitutes alimony is determined by section 71(b).

Section 71(b) provides:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>>
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

The parties agree the disputed payments satisfy section 71(b)(1)(B) and (C). The parties dispute whether those payments were made in 2005 and whether they meet the requirements of section 71(b)(1)(A) and (D).

A. Year of Payment

Respondent contends that petitioners have not established that any payments were made in cash in 2005. While petitioners cannot document the payments, they contend the record sufficiently shows that cash payments were made sometime in 2005.

The record indicates the net lump-sum alimony was paid sometime between January 17 and April 6, 2005. Exhibit 9-R, a letter from Mr. Cleland's attorney to Ms. Fisher's, shows that this payment had not yet been made as of January 17. The final judgment was entered on April 6 and stated the net lump-sum alimony had already been paid by certified check.

Petitioners have not established the other payments were made in 2005. The record does not show when the Janus transfer was made and indicates the house proceeds and temporary support arrearage were paid before 2005. Ms. Fisher's motion for contempt asked the court to enforce payment of $35,092.93 in net lump-sum alimony. The final judgment indicated that this figure

already accounted for the house proceeds, which suggests the house had already been sold and the proceeds distributed when the motion for contempt was filed on November 24, 2004.

    B.  <u>Section 71(b)(1)(A)</u>

Section 71(b)(1)(A) requires a payment "received by (or on behalf of) a spouse under a divorce or separation instrument" to be considered alimony.

Mr. Cleland was obligated to pay the temporary support arrearage under the order for temporary emergency relief and make the Janus transfer under the final judgment.

Respondent contends the net lump-sum alimony and the house proceeds were not paid under a divorce or separation agreement because Mr. Cleland made those payments before entry of the final judgment. Payments made before the existence of a written divorce instrument are not deductible as alimony, and retroactive imposition of support does not have retroactive effect for tax purposes. <u>Ali v. Commissioner</u>, T.C. Memo. 2004-284.

Petitioners contend the circuit court had ordered Mr. Cleland to pay the lump-sum alimony pursuant to the settlement agreement. Though we are disturbed that petitioners were unable to procure that order, the fact that Ms. Fisher filed a motion for contempt to enforce payment of the net lump-sum alimony suggests that such an order was in place. However, the motion for contempt does not address the house proceeds, and the record

does not indicate whether there was an order directing that payment.  Petitioners have therefore not established that the house proceeds were paid under a divorce order.

C.  Section 71(b)(1)(D)

Section 71(b)(1)(D) requires there be no liability to make any payment for any period after the payee's death.  Okerson v. Commissioner, 123 T.C. 258, 265 (2004).  If the payor remains liable, none of the payments are alimony.  Sec. 1.71-1T(b), Q&A-10, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).

In determining whether such an obligation exists, we first turn to the applicable instrument.  Gilbert v. Commissioner, T.C. Memo. 2003-92, affd. sub nom. Hawley v. Commissioner, 94 Fed. Appx. 126 (3d Cir. 2004).  Since the final judgment does not indicate whether liability for the payments would survive Ms. Fisher's death, we look to Florida State law.  Gilbert v. Commissioner, supra.

Florida courts are allowed to award alimony as periodic payments, lump-sum payments, or both.  Fla. Stat. Ann. sec. 61.08(1) (West 2006).  Lump-sum alimony is the payment of a definite sum and creates a vested right that survives death. Mann v. Commissioner, 74 T.C. 1249, 1260 (1980); Estate of Hoffman v. Commissioner, T.C. Memo. 2001-109; Canakaris v. Canakaris, 382 So. 2d 1197, 1201 (Fla. 1980).

The lump-sum "alimony" payments would ordinarily not be considered alimony under section 71 since lump-sum alimony produces an enduring liability under Florida law.  However, the lump-sum alimony award in this case is unusual because the net lump-sum alimony and house proceeds were required to be paid <u>before</u> entry of the final judgment.

Petitioners argue that Mr. Cleland's liability would have terminated had Ms. Fisher died before entry of final judgment. Under Florida law, a marriage dissolution proceeding is a personal action, and the death of one of the parties terminates the action.  <u>Gaines v. Sayne</u>, 764 So. 2d 578, 582 (Fla. 2000). Interlocutory orders generally do not survive this dismissal of the divorce proceeding before entry of a final judgment.  <u>Marlowe v. Brown</u>, 944 So. 2d 1036, 1040 (Fla. Dist. Ct. App. 2006). Therefore, Ms. Fisher's death would have extinguished Mr. Cleland's liability for the net-lump sum alimony, house proceeds, and temporary support.

D.  <u>Conclusion</u>

Petitioners have not established that the temporary support arrearage, house proceeds, and Janus transfer were paid in 2005. Additionally, the house proceeds were not paid under a divorce order, and Ms. Fisher's death would not have terminated Mr. Cleland's liability for the Janus transfer.  Petitioners have

been able to establish that only the net lump-sum alimony payment meets the requirements of section 71(b)(1)(A)-(D), and only that amount is allowable as a deduction under section 215.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.